UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CYNTHIA HAYES, AS EXECUTRIX OF
THE ESTATE OF DONNA ANN HAYES,
PLAINTIFF

VS. CASE NO. 3:19-cv-00316-JHM

COLGATE-PALMOLIVE COMPANY, ET AL,
DEFENDANTS

**PLAINTIFF'S EMERGENCY MOTION TO REMAND**

Comes the Plaintiff, Cynthia Hayes, as Executrix of the Estate of Donna Ann Hayes, by counsel, and for her emergency motion, in opposition to the Notice of Removal filed by the Defendant Johnson & Johnson, to have this matter remanded to the state court from which it was improvidently removed, states as follows:

**INTRODUCTION**

Plaintiff's Decedent, Donna Ann Hayes ("Donna") suffered and died from malignant mesothelioma as a result of her use of Johnson & Johnson's asbestos-containing talcum powder products, specifically Shower-to-Shower and Johnson's Baby Powder. Plaintiff has been litigating her case for three years and is ready for trial.[1] The state trial court has denied motions for summary judgment, heard argument and ruled on most motions *in limine*, and trial is scheduled to begin on July 16, 2019.[2]

---

[1] Plaintiff also alleges that her decedent's exposure to Cashmere Bouquet, manufactured by co-defendant, Colgate Palmolive Company, was a substantial factor in causing her disease.
[2] **Exhibit 1:** Pretrial Scheduling Order.

In an effort to derail Plaintiff's impending trial, Defendant Johnson & Johnson has improperly removed this state court products liability action based on an alleged tenuous connection to a Chapter 11 bankruptcy petition filed by one of Johnson & Johnson's talc suppliers, Imerys Talc America, Inc. ("Imerys"). Pursuant to 28 U.S.C. §1452 and §1447(c), immediate remand is warranted.

***First***, Plaintiff seeks emergency relief because a normal briefing schedule would inevitably delay the July 16, 2019 trial in this case. Johnson & Johnson has already briefed its jurisdictional argument when it filed an April 18, 2019 motion in the United States District Court for the District of Delaware to change the venue of this case—and thousands like it—to a consolidated proceeding that has not yet even been established.[3] Although Johnson & Johnson represented in its venue motion that it would not seek to remove cases where a trial was imminent,[4] it has done so here with a case that is trial ready. This attempt to improperly delay Plaintiff's state court personal injury trial should not be entertained; rather, the Court should immediately remand this case based on the briefing contained herein.

***Second***, this Court lacks subject-matter jurisdiction. Plaintiff's claims are not "related to" the pending bankruptcy proceeding filed by Debtor Imerys because the claims that Johnson & Johnson point to as a basis for federal jurisdiction are separate and distinct from Plaintiff's personal injury claims against Johnson & Johnson. Plaintiff's personal injury claims have no bearing over theoretical contract disputes Johnson & Johnson may have with Debtor Imerys. Johnson & Johnson's attempt to gloss over this distinction is fatal to its jurisdictional argument under 28 U.S.C. §1334(b) and *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368 (3d Cir. 2002).

---

[3] Johnson & Johnson's Removal Notice, Exhibit C (Johnson & Johnson's Memorandum of Law in Support of Motion to Fix Venue filed in the United States Bankruptcy Court for the District of Delaware).

[4] Representing to the Bankruptcy Court that that Johnson & Johnson is not removing cases where "trial is ongoing or scheduled to begin forthwith" *Id.* at n.4.

***Third***, even if the Court has "related to" jurisdiction, mandatory abstention under 28 U.S.C. §1334(c)(2) requires remand, as Plaintiff's claims: (1) do not arise under the bankruptcy code; (2) are exclusively based on state law; (3) are not subject to federal jurisdiction absent their purported relation to Imerys' bankruptcy; and (4) can be timely adjudicated in the state court at the trial scheduled to begin in two months.

***Fourth***, equitable remand under 28 U.S.C. §1452(b) and permissive abstention under 28 U.S.C. §1334(c)—employing essentially the same analysis—are appropriate. The relevant factors, which are nearly identical for the two sections, weigh heavily in favor of remand: Plaintiff's claims arise exclusively under Kentucky law, and extensive motion practice, discovery, and the retention of experts has been undertaken in preparation for a trial governed by the Kentucky Civil Rules. As such, relevant factors under §1452(b) and § 1334(c) weigh in favor of mandatory abstention and equitable remand. Plaintiff requests this Court immediately remand so that trial may commence as scheduled.

***Finally***, Plaintiff requests the Court award her just costs, including her actual expenses and attorneys' fees, incurred as a result of the Defendant's blatantly improper removal of this case. Johnson & Johnson removed this case in bad faith for the purpose of delaying trial and as a means to relitigate adverse rulings. Accordingly, Plaintiff requests sanctions and costs pursuant to 28 U.S.C. § 1447(c).

## BACKGROUND

On July 25, 2016, Donna Ann Hayes ("Donna") filed suit in the Jefferson Circuit Court against the Defendants for injuries resulting from her exposure to asbestos-containing talcum powder products manufactured by the Defendants. Donna alleged violations of Kentucky strict liability law and asserted Kentucky common law negligence against the Defendants. Donna died

of malignant mesothelioma on December 7, 2016. Cynthia Hayes was appointed Executrix of the Estate of Donna Ann Hayes on January 18, 2017. This action was revived and Cynthia Hayes, as Executrix of the Estate of Donna Ann Hayes, substituted as the Plaintiff on February 20, 2017. The case has been heavily litigated for nearly three years. The parties took dozens of fact and expert depositions and engaged in substantial motion practice. Further, at the end of 2018, Johnson & Johnson moved for summary judgment, filing a thorough memorandum in support. Plaintiff responded and Johnson & Johnson filed a reply. In addition, Johnson & Johnson filed numerous motions in *limine* with the Kentucky state court and joined motions filed by co-defendants. Johnson & Johnson also filed responses to Plaintiff's numerous motions *in limine* filed with the Jefferson Circuit Court.

On February 13, 2019, Imerys filed a Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings, advising the Jefferson Circuit Court of the commencement of bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware pursuant to Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq*.

On February 28-March 1, 2019, Johnson & Johnson participated in oral arguments heard by the Jefferson Circuit Court on motions for summary judgment, spoliation motions, and motions *in limine*. On March 8, 2019, Johnson & Johnson produced and participated in the deposition of Gregory Diette, one of its retained experts.[5] On April 12, 2019, the state Court issued a ruling on substantive motions, denying summary judgment to both Johnson & Johnson and Colgate and issuing rulings on most motions *in limine*.[6] Trial is scheduled to begin on July 16, 2019.[7] At no

[5] **Exhibit 2:** Deposition of Gregory Diette 03/08/19, at pp. 1-4.
[6] **Exhibit 3:** Order Regarding Motions in Limine, for Summary Judgment, and for Missing Evidence Instruction, entered April 12, 2019.
[7] *See*, Exhibit 1: Pretrial Scheduling Order, entered 12/04/18.

point following Imerys' notice of bankruptcy did Johnson & Johnson advise the State court or the Plaintiff that it was going to remove this case to this Court.

On April 18, 2019, Johnson & Johnson filed a motion to "fix venue" in the United States District Court for the District of Delaware. This motion, not before this Court although referred to by Johnson & Johnson in the present motion, sets forth in great detail Johnson & Johnson's jurisdiction arguments, mooting the need for a lengthy briefing schedule.

On April 25, 2019, two months after Debtor Imerys declared bankruptcy and nearly two weeks after the Jefferson Circuit Court denied its motion for summary judgment, Johnson & Johnson removed the case.

Despite its failed attempts to demonstrate that Plaintiff's personal injury claims against it are "related to" Imerys' bankruptcy, Johnson & Johnson remains solely liable for its own misconduct and, in any case, would need to file a subsequent proceeding to determine any right to contribution or indemnity from Debtor Imerys and the validity of any purportedly shared insurance. The remaining connections Johnson & Johnson identifies to Imerys relate solely on claims *against* the debtors, which are stayed pursuant to the automatic bankruptcy stay under 11 U.S. Code § 362 and independent from Plaintiff's claims against Johnson & Johnson.

## ARGUMENT

### 1. Johnson & Johnson's Removal is Untimely and Waived.

#### a. Johnson & Johnson's Removal is Untimely.

Johnson & Johnson's removal is untimely pursuant to 28 U.S.C. § 1446(b)(3) which requires a notice of removal be filed within 30 days after it may be ascertained that the case has become removable.[8] The 30-day requirement applies to the removal of claims related to

[8] *Queen v. Dobson Power Line Const. Co.*, 414 F. Supp. 2d 676, 679 (E.D. Ky. 2006).

bankruptcy cases under § 1452.[9] It is undisputed that Imerys filed its petition for bankruptcy on February 13, 2019. Johnson & Johnson filed its notice of removal on April 25, 2019, more than 70 days later. Johnson & Johnson's notice of removal is therefore untimely.[10] While Plaintiff recognizes there is a Circuit split in application of the 30-day requirement to removal of claims related to bankruptcy cases under § 1452, [11] courts in this circuit have held the 30-day requirement must be strictly construed.[12] In *Queen v. Dobson Power Line Const. Co.*, the District Court for the Eastern District of Kentucky held,

> Notice of removal must be filed within 30 days after the defendant receives "a copy of an amended pleading, motion, order or other paper" from which it may be ascertained that the case is removable. *See* 28 U.S.C.S. § 1446(b). "Other paper" includes any other document that is part and parcel of the state court proceedings. *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir.1992). **This time limit is to be strictly construed.** *United States ex rel. Walker v. Gunn*, 511 F.2d 1024 (9th Cir.1975).[13]

Johnson & Johnson was aware of Imerys' bankruptcy no later than February 13, 2019, and thus its contrived basis to remove. Because it removed more than 30 days from receiving notice of the bankruptcy petition, Johnson & Johnson's removal was untimely and must be remanded to the state court.

---

[9] **Exhibit 4:** *Estate of Scott v. Cervantes*, 2008 U.S. Dist. LEXIS 129198, 2008 WL 11337657, *4 (C.D. Cal. 2008) (citing *Davis v. Ocwen Fed. Bank*, 2006 U.S.Dist. LEXIS 3221, 2008 WL 155241, at *15 (M.D. Ala. 2006) ("By its plain language, the 30-day requirement of § 1446(b) applies to cases removed under § 1452")).

[10] **Exhibit 5:** *In re Asbestos Litig.*, 2002 WL 649400, *2 (D. Or. Feb. 1, 2002)(remanding asbestos case removed by non-debtor codefendants on the basis of related-to jurisdiction and holding that "the thirty-day deadline in 28 U.S.C. §1446(b) governs rather than the ninety-day deadline in Bankruptcy Rule 9027(a)."); **Exhibit 6:** *Davis v. Ocwen Fed. Bk, FSB*, 2006 WL 155241, *4 (M.D. Ala. Jan. 19, 2006) ("By its plain language, the 30-day requirement of §1446 (b) applies to cases removed under §1452).").

[11] While there are some cases that apply the 90-day period in Bankruptcy Rule 9027, the statutory time limit should govern. "Although Fed. R. Bankr. Proc. 9027 provides certain procedures for bankruptcy removal, when the rule and the statute are complementary, no difficulty exists over which one should govern. Where they conflict, the federal removal statute controls over a bankruptcy rule of procedure." Thomas B. Bennett, *Removal, Remand, and Abstention Related to Bankruptcies: Yet Another Litigation Quagmire!*, 27 Cumb. L. Rev. 1037, 1060 (1997). Particularly here, where there was no reason Johnson & Johnson could not have removed this case promptly upon the filing of Imerys' bankruptcy, there is no reason not to follow the statute.

[12] *Queen v. Dobson Power Line Const. Co.*, 414 F.Supp.2d 676, 679 (E.D.Ky. 2006).

[13] *Queen*, *supra*, at 679 (emphasis added).

Plaintiff anticipates Johnson & Johnson will assert it had 90 days to remove pursuant to Bankruptcy Rule 9027. However, the Federal Rules of Bankruptcy Procedure only govern procedure in cases under title 11 of the United States Code.[14] As set forth *infra*, this is a state court action to which title 11 of the United States Code, and thus the Federal Rules of Bankruptcy Procedure, is inapplicable. Accordingly, its removal was improper. Thus, the Court should remand to the Jefferson Circuit Court.

**b. Johnson & Johnson Waived Its Right of Removal.**

Moreover, because Johnson & Johnson actively engaged in defensive litigation for nearly two months after the filing of Imerys' bankruptcy petition, it has waived its right to removal.[15] "After a case becomes removable, a party may waive its 'right to removal by demonstrating a "clear and unequivocal" intent to remain in state court.'"[16] Another such action evidencing a clear intent to remain in state court "would be arguing and losing an issue in state court."[17]

Johnson & Johnson must not be permitted to use the federal court system as an end run around adverse state court rulings. In *Queen v. Dobson Power Line Const. Co.*, the defendant (Dobson) removed the case to federal court one day after the state court judge granted partial summary judgment to the plaintiff (Queen).[18] The District Court for the Eastern District of Kentucky held that Dobson's removal of the case after arguing and losing on the issue of summary judgment in the state court would "operate as an appeal of an adverse state court decision."[19] The Supreme Court has stated that Congress did not intend "to allow a party to experiment on his case in the State court, and, if he met with unexpected difficulties, stop the proceedings and take his

[14] Rule 1001, Federal Rules of Bankruptcy Procedure.
[15] *Northrop Grumman Tech. Servs. v. DynCorp Int'l LLC*, 865 F.3d 181, 186-88 (4th Cir. 2017).
[16] *Id.* at 186 (quoting *Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir. 1991).
[17] *Queen*, *supra*, at 678.
[18] *Queen*, *supra*, at 678.
[19] *Queen*, *supra*, at 678.

suit to another tribunal."[20] The *Queen* court held the timing of Dobson's removal clearly evidenced its intent to remain in state court:

> Coming as close to the start of trial as this action does, and so immediately on the heels of an adverse grant of partial summary judgment, the Court believes that the Defendants are effectively trying to "game the system" in contravention of clear Supreme Court language to the contrary. Because defendants cannot use removal as a de facto appeal, once the Defendants have shown their clear intent to adjudicate the case in state court (as they did here), they can no longer seek removal.[21]

Johnson & Johnson demonstrated its clear intent to adjudicate this case in state court by not only participating in a two-day hearing on motions for summary judgment and motions *in limine* two weeks after Debtor Imerys' bankruptcy, but by also producing one of its expert witnesses for deposition in the state court action. These actions evidence a clear and unequivocal intent to remain in state court and result in waiver of Johnson & Johnson's alleged right to federal removal. The Defendant's removal of the case two months after Imerys' bankruptcy, but only two weeks after the state court's adverse ruling on summary judgment, clearly represents an attempted appeal of the trial court's denial of summary judgment, which is not permitted.

**c. Emergency Relief is Necessary To Maintain a Trial Date Scheduled for Months.**

Johnson & Johnson has effectively interfered with the state court's administration of its docket. This matter is scheduled to begin trial in two months. The current trial date has been scheduled since November. Originally, this matter was set for trial to begin on January 29, 2019, but was continued, in part, because of the extensive motions filed by Johnson & Johnson and the other Defendants. The Jefferson Circuit Court has allotted 3 weeks to try this case. Because of Johnson & Johnson's improper removal, the Jefferson Circuit Court now has a trial on its docket that may or may not occur as scheduled. The uncertainty places the state court in a difficult

---

[20] *Queen*, *supra*, at 679, quoting *Meyer v. Delaware R. Const. Co. (Removal Cases)*, 100 U.S. 457, 473 (1879).
[21] *Queen*, *supra*, at 679.

position because it has to decide whether to keep the three weeks it has allotted for this trial on its docket or to schedule other matters during the currently scheduled trial date, which would cause the Plaintiff to lose a trial date for no reason other than Johnson & Johnson's gamesmanship. The Plaintiff will be prejudiced unless there is a very quick remand and she is able to maintain the trial date scheduled for months for a case that has been pending for years. Thus, Cynthia Hayes respectfully requests the Court to grant emergency relief and remand immediately to maintain the July 16, 2019 trial date set by the Jefferson Circuit Court.

**2. This Court Lacks Subject Matter Jurisdiction.**

**a. Donna's Claims Against J&J Are Not Related To Imerys' Bankruptcy.**

There is no proper basis to remove this case from the State Court, and it should be remanded immediately. Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334, which confers jurisdiction on the District Court over cases "arising under title 11, or arising in, or related to cases under title 11 [the Bankruptcy Code]."[22] Plaintiff's lawsuit against Johnson & Johnson is not a bankruptcy proceeding, nor is it an action that could only exist in a bankruptcy proceeding. Thus, it does not arise under title 11, nor does it arise in title 11.

Instead, Johnson & Johnson alleges Plaintiff's personal injury lawsuit is "related to" the Imerys bankruptcy case under title 11. 28 U.S.C. § 1334(b). A matter is characterized as "related to" a pending Chapter 11 bankruptcy proceeding if it "could conceivably have any effect on the estate being administered in bankruptcy."[23] Importantly, *Pacor*'s "conceivable effect" test asks

[22] *See also Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S. Ct. 1493, 1498 (1995).
[23] *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995)).

"whether the allegedly related lawsuit would affect the bankruptcy **without the intervention of yet another lawsuit**."[24]

The Third Circuit's opinions in *Pacor* and its progeny are particularly relevant to whether the existence of an indemnity or insurance agreement between third-parties and the debtor create "related to" jurisdiction. "An indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related to' jurisdiction."[25] Rather, the indemnification right must "**accrue upon the filing of the civil action in the proceeding related to the bankruptcy case**" and be "clearly established."[26] If "the right to indemnification is contingent on a factual finding in the action not involving the bankruptcy debtor" or "requires the commencement of another lawsuit to establish that right" indemnification will not give rise to "related to" jurisdiction.[27]

The court had an opportunity to revisit *Pacor* in *Federal-Mogul Global, Inc.*, 300 F.3d 368 and, again, found that an indemnity right was insufficient to create "related to" jurisdiction. The *Federal-Mogul* Court focused on whether "the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit."[28] Because the rights that conceivably affected the bankruptcy estate had not "yet accrued and would require another lawsuit before they could have an impact on Federal-Mogul's bankruptcy," the court affirmed the District Court's remand for lack of jurisdiction.[29]

Similar to the arguments raised here, *Federal-Mogul* involved the removal of personal injury claims alleging asbestos exposure by product manufacturers who argued that the "crisis"

---

[24] *In re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009) (quoting *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002)) (emphasis added).
[25] *Federal-Mogul Global, Inc.*, 300 F.3d at 382 (emphasis added).
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* at 382.

created by the current asbestos litigation environment would be "ameliorated" by sweeping up Plaintiff's claims into a single federal proceeding that piggybacked on a supplier's pending bankruptcy.[30] The *Federal-Mogul* Defendants repeatedly questioned "whether the American judicial system is capable of dealing with the recent explosion of [asbestos claims] in a fair and rational manner."[31] The Court noted that this argument has been "rejected both by this court in *Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir. 1996), where we stated that 'against the need for effective resolution of the asbestos crisis, we must balance the integrity of the judicial system,' *id*. at 617, and by the Supreme Court, which affirmed that decision."[32] The *Federal-Mogul* Court likewise rejected these arguments, noting that while a "nationwide class action" would provide a mechanism for consolidating cases in one proceeding, "such proposals, frequently made, have not passed both houses of Congress."[33]

Shortly after its *Federal-Mogul* opinion, the Third Circuit addressed the argument that shared insurance and a "unity of interest" between asbestos manufacturer and supplier gave rise to "related to" jurisdiction in *In re Combustion Eng'g, Inc.*[34] The *Combustion* Court rejected both arguments. As to Defendants' unity-of-interest claim, the Court pointed to the long line of opinions rejecting "'related to' jurisdiction over third-party claims involving asbestos or asbestos-containing products supplied by the debtor when the third-party claim did not directly result in liability for the debtor."[35] "[U]nity of exposure created by asbestos contained in a common product" was not sufficient to create "related to" jurisdiction.[36] As to shared insurance proceeds,

---

[30] *Id.* at 390.
[31] *Id.* at 390.
[32] *Federal-Mogul Global, Inc.*, 300 F.3d at 390 (citing to *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997), *aff 'g sub nom. Georgine*, 83 F.3d 610).
[33] *Id.*
[34] *In re Combustion Eng'g, Inc*., 391 F.3d 190, 231 (3d Cir. 2004).
[35] *Id.* at 231.
[36] *Id.* at 232.

the *Combustion* Court noted that the right to insurance proceeds was disputed and not automatic, rejecting the self-serving statement that "'the shared insurance has one cap'" and that, regardless, it was "doubtful whether shared insurance would be sufficient grounds upon which to find related-to jurisdiction over independent claims against [the non-debtors]."[37]

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*[38] addressed whether indemnity and shared insurance agreements created "related to" jurisdiction. The Court examined whether a third party (the State of Montana) would need to file a separate action for indemnity from the debtor (W.R. Grace). Because Montana would first need to be found liable and then file a separate lawsuit to determine W.R. Grace's indemnity obligations, the impact on the debtor's estate was insufficient to sustain "related to" jurisdiction.[39] The Court confirmed that "unity of interest" is really an evaluation of whether the debtor's liability is derivative of the third-parties. The *W.R. Grace* Court, reviewing its opinion in *Combustion*, found "related to" jurisdiction was absent where there was "little evidence of derivative liability" and the third-party claims involving asbestos or asbestos-containing products supplied by the debtor "did not directly result in liability for the debtor"[40] Rephrased, even if Montana were a creditor in W.R. Grace's bankruptcy proceeding, it would have to file a new claim for indemnity with respect to each Plaintiff's claim—a circumstance that the Third Circuit has repeatedly found does not give rise to "related to" jurisdiction. *Id.*

Johnson & Johnson raises three primary arguments for "related to" jurisdiction under 28 U.S.C. § 1334: (1) indemnity agreements with Debtors; (2) shared insurance agreements; and (3) shared unity of interest such that a finding of liability as to Johnson & Johnson will determine

---

[37] *Id.* at 233.
[38] 591 F.3d 164, 172 (3d Cir. 2009).
[39] *Id.*
[40] *Id.* at 172.

Debtors' liability. The facts do not support Johnson & Johnson's "related to" contention; alleged indemnity agreements, alleged shared insurance, and claimed unity of interest all fail to confer "related to" jurisdiction to this Court or a Delaware court. The Debtors are not parties to Plaintiff's lawsuit anymore. Plaintiff's claims against Johnson & Johnson are based solely on its own individual conduct, not a theory of derivative liability, such as successorship, agency, or alter ego liability.[41] The potential that Johnson & Johnson might someday have contribution and indemnity claims against the Debtors, if it is held liable on Plaintiff's claims, and the possibility of shared insurance as a result, is too tenuous and speculative a basis to confer subject matter jurisdiction in a dispute between two non-debtors that does not involve property of the estate.[42]

The 1989 and 2001 Agreements cited by Johnson & Johnson do not provide for absolute, assured indemnity.[43] On the contrary, the indemnity provisions between Johnson & Johnson and predecessors of the Debtors are qualified and highly fact determinative. The agreements expressly **disclaim** any obligation on the part of Johnson & Johnson or Imerys **to indemnify for the acts and omissions of the other**.[44] Interpretation of these agreements will undoubtedly result in separate litigation, which pursuant to *Pacor* must result in remand of this action. In *Dow,* the language contained in the indemnification agreements was never discussed by the Court so it is difficult to ascertain their scope.[45] Here, the language of those agreements is vague and ambiguous. They will be subject to many disputes as to whether Imerys has to indemnify Johnson & Johnson or vice versa. Indemnification is not guaranteed and will lead to significant litigation between the debtor and non-debtor, which has nothing to do with Donna Hayes or her claims

---

[41] *In re W.R. Grace & Co.*, 591 F.3d at 172.
[42] *Pacor, Inc., v. Higgins*, 743 F.2d 984, at 995; *In re Federal-Mogul Global, Inc.*, 300 F.3d at 382; *In re Combustion Eng'g, Inc.*, 391 F.3d at 231; *In re W.R. Grace & Co.*, 591 F.3d at 172.
[43] **Exhibit 7:** 1989 Agreement; **Exhibit 8:** 2001 Agreement.
[44] *See*, Exhibit 7 1989 Agreement, at pp. JNJ000066720-22; *See also*, Exhibit 8: 2001 Agreement, at pp. JNJ000066281-82.
[45] 86 F.3d 482 (6th Cir. 1996).

against Johnson & Johnson. A verdict in Donna Hayes' case will do nothing to determine Imerys' liability to Johnson & Johnson or vice versa.

With respect to Johnson & Johnson's insurance arguments, there is no evidence that either party procured insurance for the other. All Johnson & Johnson has attached in support that they procured insurance for each other is the 1989 and 2001 agreements indicating they were required to purchase insurance. No policies were attached. No declaration pages demonstrating reciprocal insurance were attached. No affidavits were attached indicating that insurance was actually procured by Johnson & Johnson or Imerys for the liabilities of the other. The only communication from Johnson & Johnson's insurance company attached indicates Imerys *may* be entitled to coverage related to *ovarian cancer* talc cases, not Donna's mesothelioma case.

Johnson & Johnson's self-serving description of shared insurance proceeds fails to identify what policies may or may not provide debtor coverage, the years of coverage, applicable limits, and any relevant exclusions or defenses. Considering that these parties have had a relationship for more than thirty years, Johnson & Johnson should have been in a position to produce critical confirmed information about these policies when it removed to this Court asserting that shared insurance agreements exist. Because Johnson & Johnson failed to provide actual proof of these policies when it removed this case, the only remedy is remand to state Court. This Court is not to be used as a delay tactic to give Johnson & Johnson more time to search for evidence supporting its attenuated position.

The Plaintiff is mindful of the Sixth Circuit's opinion *In re Dow Corning Corp. (Dow I)*.[46] However, it is distinguishable from the case at bar. The Sixth Circuit adopted the test set forth in *Pacor*, which *Dow I* did not replace.[47] The *Dow I* court gave great weight to the fact that the non-

[46] 86 F.3d 482, 497 (6th Cir. 1996)
[47] *Dow I*, 86 F.3d at 489.

debtor defendants had already asserted cross-claims against each other and the debtor in the underlying litigation.[48] Here, no cross-claims for indemnity or contribution[49] have been filed by any defendant, debtor or non-debtor. The only "evidence" for such a claim is Imerys' 2015 demand letter to Johnson & Johnson entities for indemnity related to *ovarian cancer* claims.[50] Johnson & Johnson has not provided any document indicating that it agreed in 2015 or agrees now that it should indemnify Imerys for any of Imerys' asbestos liabilities. Further, Johnson & Johnson has not demonstrated that it has demanded indemnity from Imerys for any of Johnson's & Johnson's asbestos liabilities arising from any of the current mesothelioma lawsuits, and especially the claims asserted by Cynthia Hayes. Certainly, Johnson & Johnson has not demonstrated that it owned shared insurance policies with Imerys related to mesothelioma claims.

The *Dow I* court also recognized that *Pacor* was appropriate for the single suit involved in that case, whereas the number of cases involved in *Dow I* (a class action) posed a greater threat to the debtor's Chapter 11 reorganization.[51] The *Dow I* plaintiffs had already been determined to have such a unity of claims that the federal judicial panel determined to try them together.[52] Here, there is only one plaintiff, Cynthia Hayes, so the *Pacor* test argues against the exercise of jurisdiction. While Johnson & Johnson will undoubtedly point to other state talc claims as evidence that *Dow I* applies, there is no unity of exposure, time frame, products, disease or applicable law. Since *Dow I*, other federal courts have made clear that the unity of interest that was found in *Dow I* does not

---

[48] *Dow I*, 86 F.3d at 494.
[49] Kentucky does not authorization contribution. *Kevin Tucker & Associates, Inc. v. Scott & Ritter, Inc*. 842 S.W.2d 873 (Ky. App. 1992).
[50] **Exhibit 9:** Indemnification Demand Notice for Ovarian Cancer Lawsuits from Imerys Talc America, Inc. to J&J Baby Products Company, dated June 23, 2015**.** .
[51] *Dow I*, 86 F.3d at 494.
[52] *Dow I*, 86 F.3d at 485.

apply to asbestos personal injury claims, rejecting the "related to" standard Johnson & Johnson advances here.[53]

Johnson & Johnson's citation to the Fourth Circuit's opinion in *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) is also unavailing. The *Combustion* Court explicitly found *A.H. Robins Co.* was "readily distinguishable, given that [it] involved [neither] asbestos or §524(g)."[54] Here, Plaintiff's case involves asbestos claims. The alleged indemnity and insurance provisions cited by Johnson & Johnson are far from undisputed. Currently, Johnson & Johnson denies any liability to Plaintiff, judicially admitting that there are no "claims" for contribution or indemnity, as there is no liability. Johnson & Johnson's arguments on the state law merits may yet prevail at trial. If Johnson & Johnson prevails at trial, there will be no effect on Debtors' estate as there will be nothing to indemnify. If and when Johnson & Johnson is held liable to Plaintiff, it can then assert and litigate whatever possible contribution, indemnity and insurance claims it may have against the Debtors in the Delaware Bankruptcy Case. Regardless, separate proceedings would be required to determine what effect, if any, will occur on Debtors' estate, destroying any potential "related to" jurisdiction arguments under *Pacor* and its progeny.[55] Accordingly, remand is proper.

---

[53] *Combustion Eng'g, Inc.*, 391 F.3d at 227 (rejecting *Dow I*, reiterating that "*Pacor*, and not *Dow Corning I*, provides the controlling standard for assessing 'related to' bankruptcy jurisdiction").

[54] *Id.* at 237 n.50. "Whatever may be the limits of §105(a) in other contexts, we hold only that § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g), which is the means Congress prescribed for channeling the asbestos liability of a non-debtor."

[55] 743 F.2d 984.

**b. Kentucky Law Does Not Authorize Claims of Indemnification to be Tried with Matters Where Apportionment Is Also Claimed.**

**i. Indemnity and Apportionment are Distinct Legal Concepts Which Are Mutually Exclusive.**

Indemnity is available to one exposed to liability because of the wrongful act of another with whom he/she is **not in pari delicto.**[56] In pari delicto results where two parties "are guilty of concurrent negligence of substantially the same character which converges to cause the plaintiff damages."[57] The seminal case on indemnity is *Brown Hotel Co. v. Pittsburgh Fuel Co*[58] where it was held the hotel (who had been found liable) was entitled to indemnity against the fuel company, which failed to properly secure a manhole cover which injured a pedestrian. The *Brown Hotel* court held the hotel was entitled to indemnity because its liability was derivative of the fuel company's actions:

> This exposed the hotel company to liability. Its fault was a negative tort in failing to check upon the act of the coal delivery man and in failing to observe its affirmative duty to the public to see that the way was free of obstruction or the pitfall. Both were in fault but not the same fault toward the party injured. The employees of **the two companies were not acting jointly or concurrently or contributorily in committing the tort**. **They were not in pari delicto**. (emphasis added)
>
> . . .
>
> Under common law rule there may be complete indemnity where one's liability is secondary because it arose from the negligence of the other party and would not have arisen but for it.[59]

Apportionment is unlike indemnity, as it requires the parties to be in pari delicto.[60] In *Degener v. Hall Contracting Corp.,* the Kentucky Supreme Court held that while indemnity was a common law creation, apportionment was created by the General Assembly:

---

[56] *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000).
[57] *See Degener*, *supra.*, 27 S.W.3d at 778.
[58] 224 S.W.2d 165 (Ky. 1949).
[59] *Brown Hotel*, *Id.* at 400-402.
[60] *Degener v. Hall Contr. Corp.,* 27 S.W.3d 775, 780 (Ky. 2010).

> To summarize, **apportionment of liability arose from statutory provisions** permitting contribution and several liability among joint tortfeasors in pari delicto. **It has no application to the common law right of a constructively or secondarily liable party to total indemnity** from the primarily liable party with whom he/she **is not in pari delicto.**[61] (emphasis added)

While, *Degener* and *Brown Hotel* involved common law indemnity, the same principles apply to contractual indemnity.

**ii. Because They are Mutually Exclusive Legal Concepts, Apportionment and Indemnity May Not Be Asserted Concurrently.**

Undoubtedly, Johnson & Johnson, as well as co-defendant, Colgate, will seek an apportionment instruction for Imerys. The Kentucky Court of Appeals has unequivocally held that apportionment and indemnity cannot co-exist, "It is clear that apportionment of fault under KRS 411.182 is inapplicable in an indemnity claim."[62] The contradictory nature of apportionment and indemnity was addressed in *Asher v. Unarco.*[63] In *Asher*, the court ruled:

> The Supreme Court of Kentucky has repeatedly noted that "the right to apportionment of liability has no application to the common law right of a constructively or secondarily liable party to total indemnity from the primarily liable party with whom he/she is not in pari delicto." *Degener*, 27 S.W.3d at 780. **Accordingly, where it is clear that a plaintiff can only state a claim for indemnity, Section 411.182 is inapplicable.**[64] (emphasis added)

The *Asher* court further held that where the evidence supports indemnity, apportionment is not appropriate:

> Accordingly, **the court finds that Asher and Unarco's reliance on KRS 411.182 is misplaced, as the right to apportionment could not apply in the present action….** Therefore, Atlas and Unarco's motions for reconsideration will be denied.[65] (emphasis added)

---

[61] *See Degener*, *id.*, at 780.
[62] **Exhibit 10:** *Downs v. CSX Transportation*, 2013 WL 3120191, at *5.
[63] **Exhibit 11**: *Asher v. Unarco*, 2007 WL 3046064 (E.D. Ky Oct. 16, 2007).
[64] *See* Exhibit 11: *Asher, supra*, at *3.
[65] *See* Exhibit 11: *Asher, supra*, at *4.

As apportionment and indemnity are mutually exclusive, they cannot be applied in the same action against the same party and certainly cannot be tried together. Kentucky law is consistent with *Pacor* and *Federal Mogul*, which recognized that Johnson & Johnson's and Imerys' indemnity claims must be pursued separately in a separate action, which has nothing to do with Donna Hayes' estate. To the extent that Johnson & Johnson has an indemnity claim against Imerys or vice versa, it cannot be tried in the same case with Donna Hayes rendering it further impermissible to remove her case from the Court in which it has been litigated for the last three years. Accordingly, the Court should immediately remand this case to the Jefferson County, Kentucky Circuit Court because Donna Hayes' claims against Johnson & Johnson are simply not related to Imerys' bankruptcy.

**3. Even If Subject Matter Jurisdiction Were Present, Abstention Requiring Remand Would Be Proper.**

Even if the Court determines that it has "related to" jurisdiction, the Court should follow the equitable doctrine of abstention and remand this case.

**a. Background on Abstention.**

Since remand can be based upon "any equitable ground," courts often apply the standards applicable to the abstention statute when considering whether remand is appropriate.[66] If mandatory abstention applies, the removal court cannot adjudicate the case and thus has no rational basis to keep it. A remand back to the state court is the only appropriate response. Even where abstention would be discretionary rather than mandatory, the presence of factors suggesting discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) may provide sufficient grounds for

---

[66] *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008); *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006); *Gregory Rock House Randy, LLC. v. New Mexico State Engineer*, 339 B.R. 255, 258 (Bankr. D.N.M. 2006) (citing *Personette v. Kennedy (In re Midgard Corp.*), 204 B.R. 764, 775 (10th Cir. BAP 1997) (holding that if abstention is required under 28 U.S.C. § 1334(c)(2), a court should remand the matter to state court).

remand.[67] The abstention analysis applies to cases removed to federal court on the basis of bankruptcy jurisdiction.[68]

The terms "core proceeding" and "non-core proceeding" are terms of art. They originate in the statutory language of 28 U.S.C. § 157(b)(1) and (2). The terms are illustrated by example rather than explained by precise definition. However, case law has provided a generally accepted definition: "We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."[69] Core proceedings arising in title 11 are matters "that are not based upon any right expressly created by title 11, but nevertheless would have no existence out of the bankruptcy."[70] Non-core proceedings do not invoke substantive rights created by bankruptcy law and can exist independent from the bankruptcy.[71] A bankruptcy court has "related to" jurisdiction over a non-core proceeding if it could conceivably affect the administration of the bankruptcy estate.[72]

**b. Abstention is Mandatory and Remand is Appropriate.**

Mandatory abstention derives from 28 U.S.C. § 1334(c)(2), which provides as follows:

---

[67] *Balcor/Morristown Ltd. Pshp. v. Vector Whippany Assocs.*, 181 B.R. 781, 788 (D.N.J. 1995) ("It is frequently held that the standards for deciding whether permissive abstention and equitable remand will be appropriate are substantially the same"); *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A.* (*In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*), 194 B.R. 750, 760 (D.N.J. 1996) ("these equitable factors compel the conclusion that the remand of this action is appropriate under the doctrines of permissive abstention and equitable remand, pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b), respectively").

[68] *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006); *see also*, *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 929 (5th Cir. 1999) (acknowledging some contrary case law but adopting the "majority rule" that removed cases are subject to abstention pursuant to 28 U.S.C. § 1334(c) and noting the lack of any textual support in the statute for a contrary rule).

[69] *Southmark*, 163 F.3d at 930; *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990) ("Core proceedings are proceedings which have no existence outside of bankruptcy."); *Schultze v. Chandler*, 765 F.3d 945, 948 (9th Cir. 2014) ("Claims that arise under or in title 11 are deemed to be 'core proceedings,' while claims that are related to title 11 are 'noncore proceedings'" (internal citation omitted)).

[70] *Id.*

[71] *Gregory Rock House*, 339 B.R. at 259 (citing *Wood v. Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

[72] *Gregory Rock House*, 339 B.R. at 259 (citing *Gardner*, 913 F.2d at 1518).

> Upon timely motion of a party in a proceeding based on a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[73]

Section (c)(2) addresses situations where a court has no discretion and must abstain. It pertains only to non-core proceedings. A court must abstain and remand a case premised on "related to" bankruptcy jurisdiction where: (1) a timely motion is made; (2) the proceeding is based upon a state law claim or state law cause of action; (3) federal courts would not have jurisdiction absent its relation to a bankruptcy case; and (4) the action can be timely adjudicated in the state forum.[74] Courts in the Sixth Circuit have explained that §1334(c)(2):

> "[E]xpresses a strong congressional desire that in respect to non-core proceedings the federal courts should not rush to usurp the traditional precincts of the state courts." *In re Norell*, 198 B.R. 987, 997 (Bankr.N.D.Ala. 1996) *citing Cook v. Griffin*, 102 B.R. 875, 877 (N.D.Ga.1989). This Congressional purpose carries great weight in favor of abstention. In the Sixth Circuit, a bankruptcy court must abstain from exercising jurisdiction over a case removed pursuant to 28 U.S.C. § 1452(a), and remand that proceeding when the statutory prerequisites of 28 U.S.C. § 1334(c)(2) are satisfied.[75]

Plaintiff's personal injury claims against Johnson & Johnson are not core proceedings within the meaning of 28 U.S.C. § 157. The Plaintiff asserts State law claims against Johnson & Johnson for personal injury resulting from exposure to asbestos fibers contained in its cosmetic talc products. Any claims against Debtors have been stayed. If Johnson & Johnson had filed its own bankruptcy case, then Plaintiff's claims would be against that bankruptcy estate and an action to liquidate that claim would be a core proceeding under 20 U.S.C. § 157(b)(2)(B).[76] However,

---

[73] 28 U.S.C. § 1334(c)(2); *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008).
[74] *In re Lowenbraun*, 313 B.R. 408, 412 (Bankr.W.D. Ky. 2004).
[75] *In re Lowenbraun*, at 412, *citing Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 584 n. 3 (6th Cir. 1990).
[76] Johnson & Johnson is trying, improperly, to get the benefits of a Chapter 11 case without the burden of filing one.

Johnson & Johnson did not file its own bankruptcy case. Plaintiff's lawsuit against Johnson & Johnson existed before the Debtors filed their Bankruptcy Case in Delaware and would continue to exist if the Bankruptcy Case were dismissed. Plaintiff's lawsuit does not invoke any substantive right provided by title 11. Nor is it "a proceeding that, by its nature, could arise only in the context of a bankruptcy case."[77] Thus, because Plaintiff's personal injury claims against Johnson & Johnson are not core proceedings within the meaning of 28 U.S.C. § 157, they are subject to mandatory abstention if the four statutory elements of 28 U.S.C. § 1334(c)(2), set forth above, are satisfied.

Indeed, the requirements for mandatory abstention are satisfied. First, Plaintiff's lawsuit against Johnson & Johnson is based upon Kentucky state law and asserts no federal cause of action. Pursuant to Federal Rule of Evidence 201, Plaintiff asks the Court to take judicial notice of her pleadings, which are required to be attached to the Notice of Removal. *See* Fed. R. Bankr. Proc. 9027(a)(1). Second, there is no basis for federal jurisdiction other than the assertion of "related to" bankruptcy jurisdiction by Johnson & Johnson. The pleadings do not reflect any other basis for federal jurisdiction over these Kentucky state law claims. If Johnson & Johnson believed otherwise, it would have removed the case to federal court on some other theory of federal jurisdiction long ago. Third, Plaintiff's lawsuit was pending in State court long before the Debtors filed their Bankruptcy Case in Delaware. The file stamps on the pleadings reflect that undisputed fact. Fourth, Plaintiff's lawsuit was set for trial in Jefferson Circuit Court, Division 10, on July 16, 2019. The case was about to "be timely adjudicated in a State forum of appropriate jurisdiction"[78] before Johnson & Johnson filed its abusive Notice of Removal. There is no reason

[77] *See In re Exide Techs.*, 544 F.3d at 218 n.14; *Southmark*, 163 F.3d at 930; *Gardner*, 913 F.2d at 1518; *Schultze*, 765 F.3d at 948.
[78] 28 U.S.C. § 1334(c)(2).

why the Jefferson Circuit Court, which has experience adjudicating asbestos personal injury claims and specifically this claim, is unable to or cannot timely adjudicate this matter. The state trial court has already considered and ruled upon the Defendants' motions for summary judgment, all parties' motions *in limine*, and a multitude of motions concerning discovery disputes. The Jefferson Circuit Court is more than capable of timely adjudicating this matter.

Thus, all elements for mandatory abstention apply to this action. This Court cannot adjudicate it. Nor could a federal District Court in Delaware. Keeping this case in the federal system is pointless and desperately unfair to Plaintiff, who was mere weeks away from having her day in court. Prompt remand to State court is appropriate.

**c. Permissive Abstention Warrant Remand to State Court.**

Even if mandatory abstention did not apply to this case, the factors supporting permissive abstention also counsel remand to State court.[79] Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides as follows:

> Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Section 1334(c)(1) allows for discretionary abstention from core matters when abstention best serves the interests of justice, judicial economy, or respect for state law.[80] The equitable considerations relevant to the appropriateness of equitable remand and discretionary abstention under sections 1452(b) and 1334(c)(1), respectively, "are essentially identical, and, therefore, a court's analysis is essentially the same for both types of relief."[81] "Various factors have been

---

[79] *Gregory Rock House*, 339 B.R. at 259; *Roddam v. Metro Loans (In re Roddam)*, 193 B.R. 971, 981 (Bankr. N.D. Ala. 1996); *In re SBMC Healthcare*, 519 B.R. 172 at 190 (S.D. Tex. 2014).
[80] *Gregory Rock House*, 339 B.R. at 259*; see also McVey v. Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 190-93 (Bankr. S.D. Tex. 2014).
[81] *Balcor/Morristown Ltd. P 'ship v. Vector Whippany Assocs*., 181 B.R. 781, 788 (D.N.J. 1995).

developed for the court to consider when determining whether to exercise its discretionary abstention power.

In *In re Lowenbraun*, the bankruptcy court for the Western District of Kentucky, citing Sixth Circuit precedent, stated that "federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought."[82] The *Lowenbraun* court cited thirteen (13) factors to consider, including, *inter alia*: (1) the effect or lack thereof of the efficient administration of the bankruptcy estate, if the court recommends remand or abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in a state court; (5) the jurisdictional basis, if any, other than Section 1334; (6) the degree of relatedness or remoteness from the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood of forum shopping by one of the parties, (11) the existence of a right to jury trial; (12) the presence in the proceeding of non-debtor parties; (13) any unusual or other significant factors.[83]

All of the factors that govern permissive abstention under 28 U.S.C. §1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) are either neutral or weigh heavily in favor of remand:

<u>Effect on the efficient administration of the bankruptcy estate</u>. The same arguments that prevent this court from exercising "related to" jurisdiction likewise demonstrate that Plaintiff's claims against Johnson & Johnson will not affect the Debtors' estate. Further, the primary

---

[82] *In re Lowenbraun*, *supra*, at 413, quoting *In re White Motor Credit*, 761 F.2d 270 (6th Cir. 1985).
[83] *In re SBMC Healthcare, LLC*, 519 B.R. at 190-93. *See also*, *In re Lowenbraun*, *supra*, at 413-414.

argument advanced by Johnson & Johnson against permissive remand—that the bankruptcy court will be able to more efficiently adjudicate Plaintiff's state court claims if consolidated in one court—has also been expressly rejected by federal courts.[84]

Difficulty or unsettled nature of the applicable state law. The merits of Plaintiff's case involve several issues of contested state law that favor remand. For example, Plaintiff's case against Johnson & Johnson involve issues concerning causation in asbestos cases that can only be adjudicated pursuant to Kentucky state law and precedent. Other jurisdictions do not apply the same substantial factor test to issues of causation as Kentucky courts. These peculiarly state law issues should be addressed by the State Court.

Degree of relatedness or remoteness of the proceeding to the main bankruptcy case. As explained in Plaintiff's argument for the lack of "related to" jurisdiction, the connection between Plaintiff's claims against Johnson & Johnson and Debtors' bankruptcy is tenuous and speculative. Even if the connection is enough to created "related to" jurisdiction, the connection is remote enough to weigh in favor of permissive remand.

Burden of the court's docket. The burden on the federal court system's docket if Johnson & Johnson is allowed to remove and transfer over 2,000 state court talc claims to Delaware is immense. Many of these cases, involve individuals who are suffering from mesothelioma—a fatal cancer that will require the court to hold numerous expedited trials in perpetuity. The Jefferson Circuit Court has dealt with the scheduling challenges of this matter for almost three years, and a

[84] *G-I Holdings*, 2017 U.S. Dist. LEXIS 68891, at *34 (noting the absence of any authority "supporting the proposition that when courts consider the 'effect on the efficient administration of the bankruptcy estate,' courts should actually be examining "judicial efficiency and economy.") (citing *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 760 (D.N.J. 1996).

trial is scheduled for July 16, 2019. The state court is best suited to adjudicate this case as it has for the last three years.

Likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties. Just like the Defendants in *Federal-Mogul*, Johnson & Johnson makes no attempt to hide the fact that it seeks to sweep thousands of state court cases—many of which have been extensively litigated under various states' law—into a single, overloaded forum, which will necessarily prevent or delay plaintiffs from having their day in court. Further, it wants either this court of the Delaware court to serve as an appellate court to the State court, which has already made many critical decisions pertaining to summary judgment and motions in limine.

Extent to which issues of state law predominate: Plaintiff's claims arise solely under Kentucky law. None of the Defendants have filed cross-claims or counter-claims. Neither Johnson & Johnson nor Debtor Imerys have filed claims for indemnity or contribution against the other. Accordingly, state law predominates.

Existence of the right to a jury trial: It is uncontested the Plaintiff has a right to have her claims tried before a jury. Indeed, a jury trial is currently scheduled to being in the Jefferson Circuit Court on July 16, 2019. Accordingly, this factor weighs in favor of remand.

Presence of a related proceeding commenced in state court or other non-bankruptcy court: At least one other talc-related case is pending in Jefferson Circuit Court, and other cases concerning Johnson & Johnson's asbestos-containing talc are pending in other Kentucky state courts. The Kentucky state court system is more than capable of handling these cases. Accordingly, this factor weighs in favor of remand.

Jurisdictional basis, if any, other than 28 U.S.C. § 1334: Johnson & Johnson has not identified any other basis for federal jurisdiction in its notice of removal. This factor weighs in favor of remand.

Substance rather than form of an asserted "core" proceeding: This is not a core proceeding and thus this factor weighs in favor of remand.

Feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court: This factor does not apply because this is not a core proceeding and there is nothing to suggest a judgment will need to be enforced by the bankruptcy court. The Defendants remaining in the state court action, Johnson & Johnson and Colgate, are not bankrupt.

Presence in the proceedings of non-debtor parties: None of the current parties to this action are the Debtors, as Plaintiff's claims against the Debtors have been stayed.

Apart from the factors identified in *In re Lowenbraun*, the plain language of 28 U.S.C. § 1452(b) instructs that a court remand on "any equitable ground." In remanding the action on equitable grounds, the *Lowenbraun* court stated:

> Most, if not all, of these factors lead this Court to find in favor of abstention. This is a case wherein the action is clearly based in state law, and, notwithstanding the defendants' innovative attempts to bring in a bankruptcy angle, should be advocated in state court. The action started as a suit between two non-debtor parties, and only after an eleventh hour third party complaint was a discharged debtor brought into the case, under some unknown criteria. Any connection to the bankruptcy estate is tenuous at best and nonexistent at worst. Moreover, removal to this court could also be construed as a not-so-thinly disguised attempt to forum shop which this Court will not condone.[85]

[85] *In re Lowenbraun, supra*, at 414.

Here, the fact that Plaintiff has been litigating her case for almost three years and is mere weeks away from trial establishes a clear equitable basis for immediate remand.[86] The claims existing between Plaintiff and Johnson & Johnson exist between two non-debtor parties. The debtor, Imerys, is no longer a party to the state court action. Johnson & Johnson's "innovative attempts to bring in a bankruptcy angle" and forum shop for what it considers a more favorable court should not be condoned by this Court.[87] Accordingly, the Court should remand this case to the Jefferson Circuit Court.

**d. Johnson & Johnson's Improper Removal Affects Other Defendants and Will Significantly Increase Plaintiff's Costs.**

It is unclear as to Johnson & Johnson's intent, but it has effectively removed the entire State Court action to this Court, including claims against co-defendant Colgate-Palmolive Company.[88] While the Plaintiff understands that Johnson & Johnson does not need Colgate's agreement to remove the claims against J&J, its removal creates several problems that can only be resolved by immediately remanding this case to the Jefferson Circuit Court. Clearly, Plaintiff's claims against Johnson & Johnson have no connection to this Court or any Federal issues. Certainly, the claims against Colgate do not either. There is no reason for Plaintiff's claims against Colgate to be litigated in this Court or the Bankruptcy court.

To the extent its removal only pertains to Johnson & Johnson, it places Cynthia in the unenviable position of having to try two cases in two courts at different times. Requiring her to try two cases, particularly after the case has been litigated for three years, is unduly prejudicial to

---

[86] *See In re Asbestos Litig.*, 271 B.R. 118, 127 (S.D. W. Va. 2001) (holding that the "temporal prejudice" to personal injury plaintiffs with trials scheduled in the next calendar year outweighs the minimal effect of such cases on the administration of the bankruptcy estate).

[87] *In re Lowenbraun*, *supra*, at 414.

[88] Indeed, the case caption is *Cynthia Hayes, as Executrix of the Estate of Donna Hayes v.* ***Colgate Palmolive Co.****, et al.*

the Plaintiff. It doubles her costs of having to try two cases. It also places her in the position of having to respond in one trial to matters that occurred in the other trial. Finally, splitting these claims also runs the risk of inconsistent verdicts. Thus, the only equitable result is to remand this case to the Jefferson Circuit Court for final resolution in July as scheduled.

**4. The Court Should Award Plaintiff Fees and Costs as a Result of Johnson & Johnson's Improvident Removal of This Case in Bad Faith, Attempting to Delay the Scheduled Trial.**

Pursuant to 28 U.S.C. § 1447(c), Plaintiff requests the Court award her just costs, including her actual expenses and attorney's fees, incurred as a result of the Defendant's blatantly improper removal of this case. 28 U.S.C. § 1447(c) provides, in part, that an "order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." In addition to this statutory ground, Plaintiff relies on the well-established federal rule that, when an adversary has acted in bad faith or vexatiously, attorney's fees may be recovered.[89]

While Plaintiff is not required to demonstrate bad faith or vexatiousness in order to be awarded attorney's fees under 28 U.S.C. § 1447(c), the Defendant removed this case in bad faith. Not only is Kentucky law quite clear with respect to Johnson & Johnson's liability for its own negligence, but its timing of the removal is inexplicable. This case has been litigated for nearly three years. Most discovery has taken place. Trial is already scheduled to occur in a matter of weeks. The Jefferson Circuit Court denied Johnson & Johnson's motion for summary on April 12, two weeks before the Defendant filed its notice of removal. Johnson & Johnson cannot use the federal court system as a de facto appeal of the state court's ruling.[90]

---

[89] See *Newman v. Piggy Park Enterprises*, 390 U.S. 400, 402, Note 7 (1968); *Grinnell Brothers, Inc. v. Touche*, 655 F.2d 725, 726 (6th Cir. 1991).

[90] *Queen v. Dobson Power Line Const. Co.*, 414 F. Supp. 2d 676, 679 (E.D. Ky. 2006).

However, as a result of the Defendant's improvident removal, the case has come to a halt and, depending on when remand occurs, the July 16, 2019 trial date is in serious jeopardy. A delay in the trial date after nearly three years of litigation severely prejudices the Plaintiff. It is critical that this case be remanded quickly so that the trial date can remain in July 2019. As set forth above, Johnson & Johnson waited too long to remove and waived its right to do so. It must not be permitted to "game the system" to the detriment of the Plaintiff's rights.[91]

A party, whose case is improvidently removed, is entitled to those fees and costs incurred in federal court that they would have not otherwise incurred had the case properly remained in state court.[92] Fees and costs are typically awarded in cases in which there is not a "close call."[93] This case is not a close call. Accordingly, Plaintiff respectfully requests the Court to enter an order awarding Plaintiff's attorney's fees and costs for improvidently removing this matter to this Court.

## CONCLUSION

Federal court have routinely rejected similar attempts by defendants who would weaponize the federal removal power to send Plaintiff's personal injury state law claims on a pointless joyride through the federal court system for the purposes of delay. This Court should reject Johnson & Johnson's attempt to do so here. For the reasons set forth herein, Plaintiff respectfully requests the Court grant her emergency motion for reman, that her case be summarily remanded back to the Jefferson Circuit Court, Division 10, pursuant to 28 U.S.C. §§ 1441, 1447(c), and 1452(b), and that the Court levy sanctions against Johnson & Johnson for its unnecessary and prejudicial removal.

---

[91] *Id.* at 679.
[92] *Avitts v. Arnoco Products Co.*, 111 F.3d 30, 32 (5th Cir. 1997).
[93] *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000).

Respectfully submitted,

**SATTERLEY & KELLEY, PLLC**

/s/ Paul J. Kelley

Joseph D. Satterley, Esq., 86838
Paul J. Kelley, Esq., 88950
Paul J. Ivie, Esq., 91481
J. Eric Kiser, Esq., 96776
J. Garrett Cambron, 98016
8700 Westport Road, Suite 202
Louisville, KY 40242
PH: (502) 589-5600
FAX: (502) 814-5500

And

Moshe Maimon
LEVY KONIGSBERG, LLP
800 Third Avenue, 11th Floor
New York, NY 10022

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing document was this **29th** day of **April**, **2019**, electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel for Defendants.

/s/ Paul J. Kelley
**COUNSEL FOR PLAINTIFF**

**DONNA ANN HAYES**

Matthew W. Breetz, Esq.
Frederick R. Bentley, Esq.
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202
***Counsel for Colgate-Palmolive Co.***

R. Scott Masterson, Esq.
Brantley C. Rowlen, Esq.
Ashley Waller Spires, Esq.
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1180 Peachtree Street, N.E., Suite 2900
Atlanta, GA 30309
***Counsel for Johnson & Johnson***

Richard T. Bernardo, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
4 Times Square
New York, NY 10036
***Counsel for Johnson & Johnson***

Moshe Maimon, Esq.
Lara Weissman, Esq.
Brendan Little, Esq.
Jerome Block, Esq.
LEVY KONIGSBERG, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
***Co-Counsel for Plaintiff***

M. Kathleen O'Connor, Esq.
Nina Trovato, Esq.
John Ewald, Esq.
Kevin M. Hynes, Esq.
Morton Dubin, Esq.
Nexus Sea, Esq.
Shasha Y. Zou, Esq.
Matt Ashby, Esq.
Elizabeth J. Lee, Esq.
Elyse Echtman, Esq.
Katie Kinsey, Esq.
Matthew L. Bush, Esq.
Paige A. Pavone, Esq.
ORRICK, HERRINGTON & SUTCLIFFE, LLP
51 West 52nd Street
New York, NY 10019
***Counsel for Johnson & Johnson***

Keith M. Ameele, Esq.
FOLEY & MANSFIELD
300 S Grand Avenue, Suite 2800
Los Angeles, CA 90071
***Counsel for Colgate-Palmolive Co.***

Meredith M. Shaw, Esq.
Brad E. Estes, Esq.
J. D. Horton, Esq.
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
***Counsel for Defendant, Colgate-Palmolive Co.***

Eric D. Cook, Esq.
Bruce T. Bishop, Esq.
WILLCOX SAVAGE
440 Monticello Avenue
Suite 2200
Norfolk, VA 23510
***Counsel for Johnson & Johnson***

Adam Abensohn, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10028
***Counsel for Colgate-Palmolive Co.***

Morgan Tovey, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
***Counsel for Colgate-Palmolive Co.***

J. Kirk Goza, Esq.
Nathan Guest, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
***Counsel for Colgate-Palmolive, Co.***