UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CYTHIA HAYES, as executrix of
The Estate of Donna Ann Hayes

Plaintiff,

vs. Civil Action No. 3:19CV-316-JHM

COLGATE-PALMOLIVE
COMPANY, et al.,

Defendants.

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO REMAND**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................................................7

ARGUMENT ....................................................................................................8

I. This Court Should Hold the Remand Motion in Abeyance Until After the Delaware District Court Decides the Venue Motion ........................8

II. J&J Timely and Properly Removed This Action Under Bankruptcy Rule 9027, 28 U.S.C. § 1452, and Applicable Local Rules ..................................10

III. This Court has Subject Matter Jurisdiction as "Related To" Debtors' Chapter 11 Case under 28 U.S.C. § 1334(b) ..................................................15

IV. This Court Should Not Conduct an Abstention Analysis, and Any Such Analysis Disfavors Abstaining Here .....................................................22

A. The Delaware District Court is the Proper Court to Conduct an Abstention Analysis ....................................................................22

B. Mandatory Abstention is Inapplicable Here Because 28 U.S.C. § 157(b)(4) Exempts Personal Injury and Wrongful Death Claims ..........23

C. This Court Should Decline to Permissively Abstain ................................24

V. Considerations Under Equitable Remand Support Denying Plaintiff's Remand Motion ..........................................................................25

CONCLUSION ....................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Robins Co., Inc. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ........................ *passim*

*Abbatiello v. Monsanto Co.*,
No. 06 CIV. 266 (KMW), 2007 WL 747804 (S.D.N.Y. Mar. 8, 2007) ........................23

*Arnold v. Garlock, Inc.*,
278 F.3d 426 (5th Cir. 2001) ........................19

*In re Asbestos Litig.*,
CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083 (D. Or. Feb. 1, 2002) ........................12

*In re Aztec Indus., Inc.*,
84 Bankr. 464 (Bankr. N.D. Ohio 1987)........................11

*Beck v. Victor Equip. Co.*,
277 B.R. 179 (S.D.N.Y. 2002)........................23, 24

*Berry v. Pharmacia Corp.*,
316 B.R. 883 (S.D. Miss. 2004)........................24

*Calumet Nat'l Bank v. Levine*,
179 B.R. 117 (N.D. Ind. 1995) ........................ 8, 9

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004)........................16

*Davis v. Ocwen Fed. Bank*,
No. 3:05cv1229-MHT (WO), 2006 U.S. Dist. LEXIS 3221 (M.D. Ala. Jan. 19, 2006) ........................12

*In re Donington, Karcher, Salmond Ronan & Rainone, P.A.*,
194 B.R. 750 (D.N.J. 1996) ........................10

*In re Dow Corning Corp*,
86 F.3d 482 (6th Cir. 1996) ........................4, 10, 19, 27

*In re Fed.-Mogul Glob., Inc.*,
282 B.R. 301 (Bankr. D. Del. 2002) ........................15, 16, 18

*GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*,
No. 09cv0571, 2009 U.S. Dist. LEXIS 51428 (W.D. Pa. June 17, 2009) ........................10

*Hopkins v. Plant Insulation Co.*,
342 B.R. 703 (D. Del. 2006) ........................................................................6, 10, 22, 24

*Hopkins v. Plant Insulation Co.*,
349 B.R. 805 (N.D. Cal. 2006) ..................................................................................9

*Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*,
No. 01-2113 DA, 2001 WL 34048067 (W.D. Tenn. Apr. 3, 2001)...................................9, 13

*In re Lower Bucks Hosp.*,
488 B.R. 303 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014) ................................15

*In re Montreal Maine & Atl. Ry., Ltd.*,
No. 1:13-MC-00184-NT, 2014 WL 1155419 (D. Me. Mar. 21, 2014) ..............................2, 20

*In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*,
496 B.R. 256 (D. Mass. 2013) ....................................................................................2

*In re Nutraquest, Inc.*,
No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143 (D.N.J. Mar. 5, 2004).................... *passim*

*In re Pacor, Inc.*,
72 B.R. 927 (Bankr. E.D. Pa. 1987) .............................................................. *passim*

*In re Pan Am. Corp.*,
950 F.2d 839 (2d Cir. 1991).........................................................................................27

*In re Riverside Nursing Home*,
144 B.R. 951 (S.D.N.Y 1992)..........................................................................................25

*Estate of Scott v. Cervantes*,
No. CV 08-03293 MMM, 2008 U.S. Dist. LEXIS 129198 (C.D. Cal. July 29, 2008) ....................................................................................................................12

*Things Remembered, Inc. v. Petrarca*,
516 U.S. 124 (1995)........................................................................................................12

*In re Twin Labs.*,
300 B.R. 836 (S.D.N.Y. 2003).............................................................................. *passim*

*In re W.R. Grace & Co.*,
386 B.R. 17 (Bankr. D. Del. 2008) ...................................................................... *passim*

*Whittingham v. CLC of Laurel, LLC*,
No. 2:06cv11-KS-MTP, 2006 WL 2423104 (S.D. Miss. Aug. 22, 2006) ...........................8, 13

*Williams v. Shell Oil Co.*,
169 B.R. 684 (S.D. Cal. 1994) .......................................................................................25

*In re WorldCom, Inc. Sec. Litig.*,
293 B.R. 308 (S.D.N.Y. 2003)....................9, 24

**Statutes**

11 U.S.C. § 1101....................5

28 U.S.C. § 157.................... *passim*

28 U.S.C. § 1334.................... *passim*

28 U.S.C. § 1441.................... *passim*

**Other Authorities**

Fed. R. Bankr. P. 9027.................... *passim*

Plaintiff's Emergency Motion to Remand (the "Remand Motion") should be denied because Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "J&J") properly and timely removed this action under Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the relevant bankruptcy statutes, 28 U.S.C. §§ 1334 and 1452. And under the controlling bankruptcy statutory framework, 28 U.S.C. §§ 157(b)(5) and 1334(b), the United States District Court for the District of Delaware ("District of Delaware" or "Delaware District Court") has the sole authority to ultimately fix venue in this action and decide whether it, and claims against J&J asserted in approximately 2,400 similar actions that were or will be removed to district courts across the country, should be centrally administered in Delaware as "related to" the chapter 11 cases of J&J's sole talc supplier Imerys Talc America, Inc. and two affiliates, Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (collectively, the "Debtors").[1] Accordingly, this Court need not take any action at this time; instead, it should defer ruling on the Remand Motion until the Delaware District Court issues its ruling on the pending venue motion.

## INTRODUCTION

Historically, the Debtors have been J&J's sole supplier of the cosmetic talc used in its iconic baby powder products. Prior to removal, this action was one of thousands proceeding in state courts across the country in which plaintiffs allege that exposure to talc supplied by the Debtors and used in J&J's baby powder products caused the plaintiffs' injuries (the "State Court

---

[1] On February 13, 2019, the Debtors each filed voluntary chapter 11 petitions, which are being jointly administered in the reorganization proceedings styled: *In re: Imerys Talc America, Inc., et al.*, Case No. 19-10289-LSS, in the United States Bankruptcy Court for the District of Delaware. Since the Chapter 11 Case was commenced, the Debtors have remained as debtors in possession under 11 U.S.C. § 1101 and have the rights, powers, and duties set out in 11 U.S.C. §§ 1107 and 1108.

Talc Claims").[2] Beset by an avalanche of personal injury lawsuits, including a large percentage of the very same State Talc Claims also pending against J&J, the Debtors sought chapter 11 protection in the United States Bankruptcy Court for the District of Delaware (the "Chapter 11 Case").[3] In light of Debtors' bankruptcy, and given the Debtors' claims to J&J's insurance and indemnification from J&J, as well as J&J's contractual rights to unlimited indemnity from and shared insurance with the Debtors, a centralized venue for adjudication of the State Court Talc Claims has become necessary to best serve not only J&J but the Debtors' creditors, including personal injury plaintiffs like Ms. Hayes.

Courts have long recognized the benefits of using 28 U.S.C. § 157(b)(5) to aggregate nationwide claims—both federal and state, against debtors and non-debtors alike—into one, centralized forum.[4] On April 18, 2019, J&J filed in the District of Delaware a Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b)

---

[2] The State Court Talc Claims are brought in roughly 2,400 actions, involving approximately 1,400 ovarian cancer actions and 980 non-ovarian cancer actions (predominately mesothelioma-related injuries). The State Court Talc Claims exclude, in the interest of judicial economy, claims on appeal of final judgments or subject to post-trial motions, as well as those in which a trial is ongoing.

[3] Notably, in nine of the eleven cases tried over the last year, plaintiffs have failed to convince juries of the merits of their claims, resulting in four defense verdicts and findings of no asbestos in J&J's talcum powder, five hung juries or mistrials, and two plaintiff verdicts.

[4] *See, e.g.*, *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (affirming transfer and centralization of thousands of state and federal personal injury cases against debtors and non-debtor co-defendants); *In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *5, *9–10, *12 (D. Me. Mar. 21, 2014) (transferring product liability claims against non-debtors under § 157(b)(5), finding "related to" jurisdiction based on shared insurance with and "an unconditional right to indemnification from" debtor); *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, 496 B.R. 256, 264–65 (D. Mass. 2013) (transferring and aggregating cases, including cases against non-debtors, to a single forum, under § 157(b)(5), in the interests of judicial efficiency and the fair and efficient distribution of the debtors' estate); *In re Nutraquest, Inc.*, No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143, at *42–43 (D.N.J. Mar. 5, 2004) (denying motion to remand and finding "related to" jurisdiction over transferred claims against non-debtors, citing the "strong legislative presumption in favor of transfer under §157(b)(5)") (quoting *In re Twin Labs.*, 300 B.R. 836, 841 (S.D.N.Y. 2003)).

(the "Venue Motion"), *see* Dkt No. 22 (Ex. C).[5] As set forth in the Venue Motion, 28 U.S.C. § 157(b)(5) vests the Delaware District Court with sole authority to set venue for the State Court Talc Claims. Under 28 U.S.C. § 1334(b), there exists federal subject matter jurisdiction over all personal injury and wrongful death claims that are "related to" the Debtors' estates.

While denial of the Remand Motion is appropriate now, this Court need not rule on the Remand Motion at this time. The District of Delaware has the sole authority to fix venue in this action. Should that court grant J&J's Venue Motion, venue for this action will be fixed in Delaware; the case will be transferred there, mooting the Remand Motion. Furthermore, given the resources of the Delaware District Court and the expected speed with which J&J anticipates the Venue Motion to be heard, any delay to the adjudication of Plaintiff's claims will be slight. In the interest of judicial economy and comity, this Court should hold the Remand Motion in abeyance until the Delaware District Court exercises its sole authority and rules on the Venue Motion. To this point, Chief Judge Colleen McMahon ordered a stay of all State Court Talc Claims removed to the Southern District of New York. *See* Dkt. No. 19., Order, *In re Various Removed State Court Actions Against, Inter Alia, Johnson & Johnson* ("*State Court Talc Actions*"), No. 1:19-cv-03530-JGK (S.D.N.Y. April 30, 2019) (finding it "in the interest of justice for this court to await rulings from the District of Delaware and/or from the Multi-District Panel prior to undertaking any substantive work in connection with any of these removed State Court Talc Actions").[6]

---

[5] Although J&J intended to attach the Venue Motion and its supporting Memorandum of Law as Exhibit C to its Notice of Removal, Dkt No. 1, it inadvertently did not do so. As a consequence, on May 7, 2019, J&J submitted these documents under a Notice of Filing. (Dkt. No. 22)

[6] With reference to Chief Judge McMahon's order, on May 3, 2019, Magistrate Judge A. Kathleen Tomlinson *sua sponte* issued a stay of six months in a removed talc action pending in the Eastern District of New York. *See* Order, *Mustapick v. A.W. Chesterton, Inc.*, 2:19-cv-02305-JMA-AKT (E.D.N.Y. May 3, 2019) (text order on docket). On May 6, 2019, Judge Aaron

In any event, the State Court Talc Claims, including Plaintiff's claims in this action, are "related to" the Debtors' Chapter 11 Case because supply agreements between the Debtors and J&J contain contractual indemnifications, including indemnifications in favor of J&J, triggered upon the filing of these personal injury claims without regard to ultimate findings on liability. Specifically, the Debtors have claimed rights to approximately two billion dollars of J&J's insurance for expenses incurred in defending against the thousands of talc-related lawsuits. *See* Dkt. No. 22, Ex. C, Nolan Decl., Ex. 1 (First Day Declaration) ¶ 42. These contractual indemnification claims and claims on shared insurance stand to impact the pool of assets available for Debtors' creditors. Moreover, courts have recognized identity of interest in the sale of a single product as additional grounds for "related to" jurisdiction.[7] Here, the Debtors exclusively supplied the talc in the talcum powder products sold by J&J. Thus, each State Court Talc Claim plaintiff can draw a straight line from the two J&J talcum powder products at issue to the Debtors' talc.

In coordination with the filing of the Venue Motion, this action was properly and timely removed under Bankruptcy Rule 9027 and 28 U.S.C. §§ 1334 and 1452. Bankruptcy Rule 9027, which provides 90 days to remove, is specifically applicable to bankruptcy-related removals

---

Polster has also stayed two cases in the Northern District of Ohio. *See* Order, *Berry v. Clark Indus. Insulation Co.,* 1:19-cv-00890-DAP (N.D. Ohio, May 6, 2019) (text order on docket); Order, *Reardon v. Colgate-Palmolive Co.*, 1:19-cv-00892-DAP (N.D. Ohio May 6, 2019) (text order on docket). While several remand orders have also issued from California and South Carolina federal courts since April 29, 2019, they have been largely without in-depth analysis of jurisdictional considerations. They also rely primarily on equitable considerations that J&J submits are outweighed by equitable treatment to Debtors' creditors, efficient administration of the Debtors' estates, and preservation of judicial resources. The inconsistent outcomes among the removed claims by federal courts only underscore the need for a stay of consideration of the Remand Motion in deference to the Delaware District Court.

[7] *See, e.g., A.H. Robins,* 788 F.2d at 999; *In re Dow Corning,* 86 F.3d 482, 493–94 & n.11 (6th Cir. 1996); Dkt. No. 22, Ex. C, Nolan Decl., Ex. 14 (TKH Hr'g Tr.) at 16:17–25.

under § 1452, and thus controls here. Plaintiff's reliance on the 30-day removal statute, 28 U.S.C. § 1446(b), Pls. Mem. at 5–7, applicable to the general removal statue, 28 U.S.C. § 1441, is, therefore, misplaced.

Nor has J&J waived its right to remove this action by complying with the state court's Pretrial Scheduling Order (attached as Exhibit 1 to the Remand Motion) or other pre-trial procedures. Because the automatic stay does not relieve J&J of its obligations to defend itself in state court, 11 U.S.C. § 362(a)(1), J&J continued to meet its obligations – including participating in motions hearings scheduled before the Chapter 11 Case was initiated and defending an expert deposition – until filing its Notice of Removal. Waiver is only appropriate in extreme situations, such as when a removing party has sought affirmative relief in state court by filing a counter-claim, or triggered the grounds for removal itself through gamesmanship in an attempt to forum shop. J&J's compliance with the state court's orders and procedures cannot constitute a waiver.

With jurisdiction firmly established (and more properly decided by the Delaware District Court), and because mandatory abstention is inapplicable under these circumstances, the only potential basis to remand this properly and timely-removed action would be equitable grounds under 28 U.S.C. § 1452(b). The equitable considerations overwhelmingly favor denying the Remand Motion here. Indeed, remand would only perpetuate the inefficiencies and inconsistencies that J&J's Venue Motion seeks to avoid. These inefficiencies favor removal particularly because the Delaware District Court has authority to effectuate transfer of any State Court Talc Claims removed in connection with the Venue Motion, even if those cases have already been remanded to state court by the time the Venue Motion is decided. *See, e.g.*, Mem. Op., *In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN), Dkt No. 34, at 6 ("[T]he Court may consider the transfer of the cases under § 157(b) regardless of the decisions reached

by the state courts on transfer and remand issues . . . ."); Dkt. No. 22, Ex. C, Nolan Decl., Ex. 15 (*Hopkins v. Plant Insulation Co.*, No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues").

Ms. Hayes is not alone in wanting a prompt disposition of her claim. There are thousands of plaintiffs around the country seeking their day in court—nearly all of them diagnosed with cancer and many of them with a poor medical prognosis.[8] Plaintiff's counsel knows this well, as they represent many other plaintiffs whose State Court Talc Claims are not yet set for trial because of the thousands of cases currently burdening the state court system. Transferring all of the State Court Talc Claims to the District of Delaware affords *all* plaintiffs—not just those with a current trial date—the best chance for an efficient adjudication of their claims while they are still alive. The District of Delaware, under the bankruptcy venue statute invoked here, has more resources at its disposal to facilitate this adjudication, such as by holding a single general causation hearing relating to all the State Court Talc Claims, setting trials or bellwether trials, and remanding cases if appropriate to federal court venues around the country for expedited trials. Indeed, J&J's Venue Motion stands to benefit all of Debtors' creditors, including all of the State Court Talc Claim plaintiffs who are equally desirous of their day in court.[9]

---

[8] Here, Plaintiff's decedent, Donna Hayes, has passed away unfortunately, and the trial date in this matter is roughly two-and-a-half months out.

[9] *Cf., e.g., W.R. Grace & Co.*, 386 B.R. at 35–36 (expanding a preliminary injunction to bar prosecution of pending actions against non-debtor railroad over whom the court found "related to" jurisdiction, and weighing the alleged hardship to "sick and dying" claimants caused by expanding the injunction, but finding that "[t]he diversion of time, effort and resources that would be required if the [actions] proceed would further delay the reorganization process, and implicate estate property," and noting that the parties were permitted to pursue testimony preservation procedures upon application). Moreover, if one accepted the argument that the previously-set July 16, 2019 trial date warranted remand rather than removal and transfer to one efficient forum subject to § 157(b)(5), it would follow that multidistrict litigation of such claims

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 18, 2019, J&J filed its Venue Motion in the District of Delaware. *See In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN), Dkt No. 1 (D. Del.). The Venue Motion and supporting papers were submitted to this Court in connection with J&J's Notice of Removal. *See* Dkt. No. 22. As noted in the Memorandum of Law supporting the Venue Motion, Dkt. No. 22, the primary purpose of the Venue Motion is to centralize approximately 2,400 of claims against J&J—all of which allege that the Debtors' talc caused personal injury and/or wrongful death—in one forum, i.e., the Delaware District Court. *See id*. On April 30, 2019, J&J filed in the District of Delaware an Emergency Motion for Provisional Transfer under 28 U.S.C. § 157(b)(5). *See In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN), Dkt Nos. 12-13. The Delaware District Court denied that motion on May 9, 2019, finding emergency transfer unnecessary in advance of a decision on the merits of the Venue Motion, on which briefing will be complete by May 23, 2019. *See id.* Dkt. Nos. 34-35.

Under Bankruptcy Rule 9027(a)(1), the deadline to remove prepetition claims related to the Debtors' bankruptcy estates is "90 days after the order for relief under the Code." Fed. R. Bankr. P. 9027(a)(1); 28 U.S.C. § 1452(a). Therefore, the removal deadline is May 14, 2019. On April 18, 2019—nearly a month before the removal deadline, J&J filed a notice of removal in this Court. *See* Dkt. No. 1 (the "Notice of Removal"). In accordance with Bankruptcy Rule 9027(b), J&J promptly served written notice of the removal on Plaintiff's counsel of record. On April 19, 2019, consistent with Bankruptcy Rule 9027(c), J&J filed a copy of the Notice of

---

is improper for the same reason. Yet over 80 percent of the talc cases against J&J have already been efficiently consolidated in an MDL. *See* Case No. 3:16-md-02738 (D.N.J.). By establishing this MDL, the federal courts have effectively rejected the argument that plaintiff-specific circumstances require thousands of cases to be decided separately, and potentially inconsistently. This consideration should not override the purposes of § 157(b)(5) and the orderly and efficient operation of the courts.

Removal with the clerk of the Jefferson Circuit Court (the "State Court") from which this case was removed. As of that filing, "[t]he parties shall proceed no further in that court unless and until the claim or cause of action is remanded." Fed. R. Bankr. P. 9027(c).[10]

## ARGUMENT

### I. **This Court Should Hold the Remand Motion in Abeyance <u>Until After the Delaware District Court Decides the Venue Motion</u>**

This Court need not expend judicial resources deciding the Remand Motion at this time as a speedy decision from the District of Delaware granting the Venue Motion would fix venue for the State Court Talc Claims in Delaware, effectively transferring this action to the District of Delaware. 28 U.S.C. § 157(b)(5) instructs "that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*." (emphasis added). In cases involving transfer and remand motions, courts have held that the "*transferee*" court under section 157(b)(5) is the proper forum to decide the remand motion. *See, e.g., Whittingham v. CLC of Laurel, LLC*, No. 2:06cv11-KS-MTP, 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 123 (N.D. Ind. 1995) (staying all proceedings while debtor-defendant pursued section 157(b)(5) motion and deferring ruling on

---

[10] On the April 29, 2019, Plaintiff filed her Emergency Motion to Remand, 31-pages in length. (Dkt. No. 10). On May 7, 2019, this Court entered a Text Order requiring (a) J&J to respond to the Remand Motion on or before May 13, 2019; and Plaintiff to file her reply on or before May 20, 2019. (Dkt. No. 21). Also on May 7, 2019, with respect to her Remand Motion, Plaintiff filed a Motion for Leave to File Motion in Excess of Twenty-Five Pages. (Dkt. No. 23).

pending motions because "whichever court ultimately takes the case should be the one that rules on the remaining argument"); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001) (holding that transferee court in multidistrict litigation is "a proper authority to decide the remand motion" and "[t]he general rule is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]" until after the case is transferred). This is consistent with the language and purpose of section 157(b)(5). *See Calumet*, 179 B.R. at 121 ("[A] purpose behind section 157(b)(5) is making it possible for a single forum to oversee the many claims and proceedings that might arise in or affect a bankruptcy case.").

Accordingly, because J&J has moved under § 157(b)(5) to fix venue in the Delaware District Court, it is the Delaware District Court rather than this Court that should engage in any abstention analyses or otherwise consider remand issues in the first instance.[11] For this reason, courts routinely defer ruling on motions to remand until after the court vested with the authority to fix venue under section 157(b)(5), here the District of Delaware, decides whether the case would be transferred. *See, e.g.*, *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 808 n.2 (N.D. Cal. 2006) (remanding *after* § 157(b)(5) motion was decided).

Setting venue in this case is left to the exclusive discretion of the Delaware District Court. Should that court find that it has jurisdiction, remand will be inappropriate unless it chooses, against a "strong legislative presumption in favor of transfer," to abstain following

[11] As acknowledged by Plaintiff, Pl. Mem. 20 n.67, 23 n.81, the permissive abstention analysis under 1334(c)(1) is essentially identical to equitable remand analysis under section 1452(b). *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Accordingly, the same equitable considerations that overwhelmingly support denial of the Remand Motion under section 1452(b), also disfavor permissive abstention under section 1334(c)(1).

abstention analyses. *In re Nutraquest, Inc.*, No. 03-6859 (GEB), 2004 U.S. Dist. LEXIS 29143, at *43 (D.N.J. Mar. 5, 2004) (quoting *In re Twin Labs.*, 300 B.R. 836, 841 (S.D.N.Y. 2003)).

Further to this point, under § 157(b)(5), the Delaware District Court may fix venue for this action, even if it has already been remanded, thus underscoring the waste of resources involved in ruling on any remand motion. *See* Mem. Op., *In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN), Dkt No. 34, at 6 ("[T]he Court may consider the transfer of the cases under § 157(b) regardless of the decisions reached by the state courts on transfer and remand issues . . . ."); Dkt. No. 22, Ex. C, Nolan Decl., Ex. 15 (*Hopkins v. Plant Insulation Co.*, No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues"); *see also A.H. Robins*, 788 F.2d at 998 (affirming district judge's order transferring claims, *wherever pending*, to a single forum) (emphasis added); *In re Dow Corning*, 86 F.3d at 493 (citing with approval the order entered in *A.H. Robins*). In the interests of comity, efficiency, and achieving uniform outcomes by coordinated judicial proceedings, this Court should await the District of Delaware's forthcoming decision on the Venue Motion before issuing a ruling on the Remand Motion.

## II. J&J Timely and Properly Removed This Action Under Bankruptcy Rule 9027, 28 U.S.C. § 1452, and Applicable Local Rules

Plaintiff's claims against J&J are "related to" the Chapter 11 Case, and thus were removed under 28 U.S.C. § 1452. As the majority of courts have held, "the time limits stated in Bankruptcy Rule 9027 should control with regard to Section 1452." *GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*, No. 09cv0571, 2009 U.S. Dist. LEXIS 51428, at *4 (W.D. Pa. June 17, 2009); *see also In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 756 (D.N.J. 1996) ("The majority of courts have upheld the applicability of Bankruptcy Rule 9027 to Section

1452 and enforce a ninety day time limitation.") (citing *Textron Investment Mgmt. Co. v. Struthers Thermo-Flood Corp.*, 169 Bankr. 206, 210 (D. Kan. 1994); *Plowman v. Bedford Fin. Corp.*, 218 B.R. 607, 613 n.13 (Bankr. N.D. Ala. 1998) ("The majority position is it is Fed. R. Bankr. P. 9027 [that controls]."); *In re Klober*, 142 Bankr. 300, 301 (Bankr. E.D. Ark. 1992); *In re Pacor, Inc.*, 72 Bankr. 927, 930-31 (Bankr. E.D. Pa. 1987). The majority rationale is based upon the view that "Rule 9027 was *not* so tied to the former removal statute, § 1478, that the repeal of § 1478, and the subsequent enactment of § 1452, caused the implicit repeal of Rule 9027." *Id.* at 756 (quoting *In re Aztec Indus., Inc.*, 84 Bankr. 464, 469 (Bankr. N.D. Ohio 1987)). In other words, the deadlines set forth by Bankruptcy Rule 9027 remain in effect and control here.

To elaborate on this issue, the court in *In re Pacor, Inc.*, 72 B.R. 927, 930–31 (Bankr. E.D. Pa. 1987), succinctly stated:

> When Congress enacted 28 U.S.C. § 1452, its intent was simply to alter the statutory reference from bankruptcy court to district court. S. Rep. No. 98-55, 98th Cong., 1st Sess. 43 (1983). It expressed no desire to alter the procedure or time periods set out in Rule 9027 which were then in effect. Indeed, the proposed amendments to Bankr. Rule 9027 maintain the time limits currently existing in this rule and alter the procedure by having the removed application filed with the district court clerk. Moreover, since § 1446 makes no provision for removal by a plaintiff, while § 1452 continues to allow plaintiffs to remove, it is difficult to see how Rule 9027 could be supplanted by § 1446 unless one also supplants § 1452 by § 1441.

Thus, Plaintiff erroneously relies on 28 U.S.C. § 1446, which outlines the procedure under the general removal statute, 28 U.S.C. § 1441, to suggest J&J's removal of this action was untimely. Pl. Mem. 5–7. Plaintiff claims that, "Johnson & Johnson's removal is untimely pursuant to 28 U.S.C. § 1446(b)(3) which requires a notice of removal be filed within 30 days after it may be ascertained that the case has become removable." Pl. Mem. at 5. Plaintiff's

assertion finds no support in the leading case law. In rejecting the minority view proposed by Plaintiff, the court in *Pacor* observed that courts following the minority view "simply neglect[] to take into account the significant differences between removal under § 1452 and § 1441." *In re Pacor, Inc.*, 72 B.R. at 931.[12] "The removal procedures and time deadlines established by this rule are different from those set out in 28 U.S.C. §§ 1441, 1446 because of *unique concerns and policies* embodied in the Bankruptcy Code." *Id.* at 930 (citing the Advisory Committee Notes to Bankruptcy Rule 9027). Specifically, to effectuate those policies, "Congress intended to allow the rule making process to establish the removal procedure for bankruptcy related proceedings from other courts." *Id.* Thus, the court concluded, "the time periods set forth in Rule 9027(a)(2), (3) are still valid."[13] *Id.*

In recognition of the unique concerns and policies underlying the Bankruptcy Code—protecting the Debtors' estates and creditors rights—this Court should likewise adopt the majority rule.[14] Adopting the minority view would contravene standard bankruptcy practice. *Cf.*,

---

[12] "Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state courts—a chapter now comprising 28 U.S.C. §§ 1441–1452—meant to *enlarge*, not rein in, federal trial court removal/remand authority for claims related to bankruptcy cases." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 131–32 (1995) (Ginsburg, J. concurring) (emphasis added).

[13] Plaintiff's reliance on *Queen v. Dobson Power Line Const. Co.*, 414 F. Supp. 2d 676 (E.D. Ky. 2006), to support her argument to the contrary is misplaced. That case involved a removal under complete preemption principles under ERISA – not a removal related to a bankruptcy proceeding under 28 U.S.C. § 1452 – and it did not even remotely implicate the issue now at hand.

[14] The cases the Plaintiff cites to the contrary do not alter this analysis. *See* Pl. Mem. at 6 nn.9-10. For example, *Estate of Scott v. Cervantes*, No. CV 08-03293 MMM (CWx), 2008 U.S. Dist. LEXIS 129198, at *4 (C.D. Cal. July 29, 2008), blindly crops language—"By its plain language, the 30-day requirement of § 1446(b) applies to cases removed under § 1452"—from *Davis v. Ocwen Fed. Bank*, No. 3:05cv1229-MHT (WO), 2006 U.S. Dist. LEXIS 3221, at *15 (M.D. Ala. Jan. 19, 2006). But the *Davis* court cited neither statute nor case law in making that proclamation. Nor did the court even consider—anywhere in its opinion—Bankruptcy Rule 9027. Moreover, *In re Asbestos Litig.*, CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083, at *9 (D. Or. Feb. 1, 2002), bases its conclusion on a perceived conflict between 28 U.S.C. § 1446 and

*e.g.*, *In re Imerys Talc America, Inc.*, No. 19-10289 (LSS), Dkt. No. 93 (Bankr. D. Del.) (moving under Bankruptcy Rule 9027 to extend the removal deadline without reference to 28 U.S.C. § 1446).

In any event, courts faced with similar procedural postures have held that the transferee court—here, the District of Delaware—should decide motions to remand. *See Whittingham*, 2006 WL 2423104, at *1 ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001) (holding that transferee court in multidistrict litigation is "a proper authority to decide the remand motion" and "[t]he general rule is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]" until after the case is transferred). Thus, to the extent that the law within the Sixth Circuit and the Third Circuit diverges as it relates to the timeliness of J&J's Notice of Removal—which it does not—the law within the Third Circuit should govern.

Additionally, J&J's continued defense of itself in state court cannot constitute a waiver of its right to removal, as Plaintiff contends. Pl. Mem. 7-8. Waiver is only appropriate where there is "clear and unequivocal" intent to litigate in state court and to abandon the right to a federal forum. *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 760–61 (6th Cir. 2016) ("Waiver of the right to remove must be clear and unequivocal[, and] [a]ny such waiver usually must be explicit, but a defendant may constructively waive the right to remove by taking substantial action in state court that manifests a willingness to litigate on the merits.") (citation and quotation marks omitted). In

---

Bankruptcy Rule 9027, without grappling with the reasons underlying the distinction. *See id.* at *8.

light of this standard, "[a]ffirmative actions, like filing a cross-claim or permissive counterclaim in state court, are the kinds of steps that may amount to waivers." *Id.* at 761.[15] Thus, "[i]n general, 'the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits.'" *Resolution Trust Corporation v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994) (quoting *Beighley v. FDIC,* 868 F.2d 776, 782 (5th Cir. 1989).

J&J could not seek relief from its state court obligations under the automatic stay, *see* 11 U.S.C. § 362(a)(1), and so continued to meet those obligations–including participating in the hearings conducted by the State Court on February 28, 2019 and March 1, 2019 on matters fully-briefed *before* the Debtors filed their Chapter 11 Case–from the filing of this case until J&J's own filing of its Notice of Removal. In timing its decision, J&J sought to balance the 90 days afforded to it by Bankruptcy Rule 9027 with the need for an expeditious resolution to the numerous State Court Talc Claims, including Plaintiff's.[16] It follows, therefore, that J&J's

---

[15] *See also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 790 (9th Cir. 2018)("[W]hen a party takes necessary defensive action to avoid a judgment being entered automatically against him, such action does not manifest an intent to litigate in state court, and accordingly does not waive the right to remove."); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1217 n.15 (3d Cir. 1991) ("In the context of a litigation-based waiver, the 'clear and unequivocal' standard makes sense. Otherwise, in order not to waive the right to remove defendants would have to remain inactive in the state court, running the peril of being held in default should a remand from the district court later occur.").

[16] A case cited by Plaintiff similarly shows that J&J's pre-trial actions cannot constitute a waiver. In *Northrop Grumman Technical Services, Inc. v. DynCorp Int'l LLC*, 865 F.3d 181 (4th Cir. 2017), the Fourth Circuit concluded that waiver of the right to remove was proper only in "extreme situations," such as when, as in that case, the removing party triggered the very grounds for removal in an attempt to forum-shop. *See id.* at 186, 188. Here, the grounds for removal (as well as the choice of forum) were triggered by the Debtors. Plaintiff accuses J&J of having engaged in "gamesmanship" in its removal of this case to avoid the previously-set July 19, 2019 trial date. Pl. Mem. 9. However, this proposition is belied by the fact that J&J's removal of this case must be viewed in the context where it contemporaneously removed over 2,000 similar cases in light of the filing of the Chapter 11 Case. The Chapter 11 Case is what triggered the removal in this case (and the others), not any desire to avoid the upcoming trial date, or for that matter, to "appeal" the State Court's denial of its Motion for Summary Judgment in this Court.

removal of this matter does not constitute, as Plaintiff argues, an "end run around adverse state court rulings[,]" Pl. Mem. 7.

## III. This Court has Subject Matter Jurisdiction as "Related To" Debtors' Chapter 11 Case under 28 U.S.C. § 1334(b)

As more fully outlined in J&J's Venue Motion,[17] federal district courts have "related to" jurisdiction over Plaintiff's personal injury claims against J&J, and all of the State Court Talc Claims, under 28 U.S.C. § 1334(b). Plaintiff's arguments to the contrary find no support in the facts or in the law. Plaintiff relies heavily on *Federal Mogul* to support her argument "related to" jurisdiction does not exist here because "the indemnification right must '**accrue upon the filing of the civil action in the proceeding related to the bankruptcy case'** and be 'clearly established.'" Pl. Mem. at 10 (emphasis in original) (quoting *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002)).[18] *Federal Mogul* is <u>not this case</u>.

*Federal Mogul* involved personal injury and wrongful death asbestos claims brought by tens of thousands of plaintiffs "against various manufacturers and distributors of friction products . . . as well as against companies that made and sold products that incorporated friction products" in their own products. *Id.* at 372. There, eleven movants, primarily automobile manufacturers, sought to remove their cases from state court to the Debtors' bankruptcy proceeding. *In re Fed.-Mogul Glob., Inc.*, 282 B.R. 301, 303 (Bankr. D. Del. 2002). But in asking the related district court to take jurisdiction, the movants "produced no evidence whatsoever of even a bare agreement to indemnify running between the debtors and the solvent

[17] In the interest of economy, J&J respectfully refers the Court to the Statement of Facts and Argument Section II of its Venue Motion for necessary background and preliminary argument on federal courts' jurisdiction over this action. Dkt. 22.

[18] Plaintiff purports to quote *Federal Mogul* but actually appears to be quoting, with some error, *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014).

co-defendants . . . .” *Id.* at 376 (quoting *In re Fed.-Mogul Glob., Inc.*, 282 B.R. at 311). Only one of the many movants “submitted documents that could even plausibly support a claim based on a written indemnification agreement, namely boiler-plate purchase orders that refer to documents containing indemnification language”—documents the court determined were “‘too thin a thread with which to pull [the movants] into the [debtors’] bankruptcy.’” *Id.* at 376 (quoting *Fed.-Mogul Glob., Inc.*, 282 B.R. at 312). More specifically, the lower court declined to “believe that a manufacturer may write its own invitation to the table of any of its suppliers’ bankruptcies by including a boilerplate indemnification clause in its purchase orders,” rather than negotiating for contractual indemnities. *Fed.-Mogul Glob., Inc.*, 282 B.R. at 312.

Accordingly, the district court determined that “[n]o asset of the estate [was] threatened,” and thus the facts did not fit within *Pacor*’s “related to” standard. *Fed.-Mogul Glob., Inc.*, 282 B.R. at 311. On appeal, the Third Circuit, “remain[ing] a step away from reaching the merits” and applying a “clear error” standard of review, simply declined to issue a writ of mandamus with respect to the district court’s finding that it lacked “related to” jurisdiction on the basis of the tenuous, common law indemnification and contribution rights. *Id.* at 379–84.

The facts here are readily and critically distinguishable from *Federal Mogul*.[19] J&J is the only movant and only J&J’s talc products, supplied exclusively by Debtors, are at issue in the

---

[19]The other cases on which Plaintiffs rely are likewise factually distinguishable from this case. *See, e.g.*, *Pacor, Inc.*, 743 F.2d at 995 (no “related to” jurisdiction on the basis of potential non-contractual indemnification claims “not giv[ing] rise to any automatic liability on the part of the estate,” and where “[t]here would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim”); *In re Combustion Eng’g, Inc.*, 391 F.3d 190, 231–32 (3d Cir. 2004) (noting a lack of “express indemnification obligations” asserted within a prepackaged Chapter 11 reorganization plan that attempted to channel all asbestos claims against debtor and non-debtors through a post-confirmation trust); and *In re W.R. Grace & Co.*, 591 F.3d 164, 172–73 (3d Cir. 2009) (“[A]n entirely separate action would be necessary for any liability incurred by Montana to have an impact on Grace’s estate. Specifically, Montana would first have to be found liable by its state courts and would then have to

State Court Talc Claims. More importantly, as set forth in the Venue Motion, the State Court Talc Claims, including Plaintiff's here, easily satisfy the post-*Pacor* standard for "related to" jurisdiction.[20] Indeed, J&J's indemnification claims against Debtors vested immediately upon the filing of the State Law Talc Claims—without regard to the State Court Talc Claims' resolution in court or the need for subsequent lawsuits—because contractual language states that the Debtors are to defend and indemnify J&J with respect to "all liabilities" implicated in these types of personal injury claims. *See* Dkt. No. 22, Ex. C, Nolan Decl., Ex. 2 (1989 Agreement) § 10; Ex. 3 (2001 Agreement) § 7(a)(iv). Indemnifiable defense costs began accruing on the day Plaintiff filed her complaint. Thus, the contractual indemnification claims implicated here are *not* contingent on the occurrence of any other event and are not "qualified and highly fact determinative." Pl. Mem. 13.[21] No matter the verdict, Plaintiff's lawsuit against J&J will impact

---

successfully bring an indemnification or contribution claim against Grace in the Bankruptcy Court.")

[20] Plaintiffs' appeal to *Federal-Mogul*'s discussion of *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996), also misses the mark. Pl. Mem. 11. The point of that discussion was that the need for effective resolution of an "asbestos crisis" cannot justify an end-run around applicable, unmet statutory requirements. *See Fed.-Mogul Glob.*, 300 F.3d at 390. In *Georgine*, the court would not overlook a class's inability to satisfy Rule 23 class action requirements, 83 F.3d at 617, while in *Federal-Mogul*, the court would not overlook its conclusion that the district court's denial of "related to" jurisdiction was not worthy of a writ of mandamus, nor that it had "no jurisdiction over the decision of the District Court denying the transfer and remanding the cases to the state courts from which they came," 300 F.3d at 390. Here, "related to" jurisdiction *does* exist, and § 157(b)(5) authorizes the Delaware District Court to aggregate the State Court Talc Claims. Accordingly, there is no need for an "end run" in this case.

[21] Further to this point, whether contractual disputes remain or defenses may be asserted is of no consequence. *Cf. In re LTC Holdings, Inc.*, 587 B.R. 25, 38–39 (Bankr. D. Del. 2018) (finding "related to" jurisdiction on the basis of a contractual indemnification claim, reasoning that "[a]ny possible defenses by the Debtors against [non-debtor's] claim are not enough to derail jurisdiction over [action against non-debtor]. In other words, the Debtors' liability to [non-debtor] under the indemnification is not contingent on a finding of liability. . . . [The] indemnification claim has fully vested and can be acted upon at any point during the [action]"); *see also In re W.R. Grace & Co.*, 386 B.R. 17, 28–29 & n.45 (Bankr. D. Del. 2008) (finding "related to" jurisdiction over claims against non-debtor on the basis of indemnification right and

the Debtors' estates. The lower court in *Federal Mogul* specifically recognized that such absolute indemnification rights "plainly establish[] a sufficient nexus between suits against [non-debtors] and the administration of the bankrupt's estate." *In re Fed.-Mogul Glob., Inc.*, 282 B.R. at 309 (citing *A.H. Robins*, 788 F.2d at 1007–08).

Even setting aside the import of J&J's and the Debtors' contractual indemnification obligations, "related to" jurisdiction also exists over this case by virtue of shared insurance between J&J and the Debtors which threatens to deplete the pool of assets in the estate available for creditors. Indeed, the Debtors have represented before the Bankruptcy Court that they "have the right to seek proceeds from various insurance policies issued to J&J and its subsidiaries with total aggregate limits of approximately $2 billion."[22] Dkt. No. 22, Ex. C, Nolan Decl., Ex. 1 (First Day Decl.) ¶ 42. Thus, every dollar J&J spends defending against the State Court Talc Claims depletes a pool of funds that the Debtors have laid claims to, potentially reducing distributions to their creditors. Further, given that the lawsuits involve the same products containing the Debtors' talc, J&J's and the Debtors' shared identity of interests further supports jurisdiction. The case law Plaintiff wields confirms the decisive impact of these additional bases for jurisdiction.

For example, in *Federal Mogul*, in distinguishing the case before it from *A.H. Robins*, the district court noted that the question of common insurance in *A.H. Robins* "created a link decisively favoring bankruptcy jurisdiction." 282 B.R. at 310. And on appeal, the Third Circuit

---

shared insurance although "[d]ebtors do not acknowledge liability to [non-debtors] under any of these circumstances"); *In re W.R. Grace & Co.*, 315 B.R. 353, 357–58 (Bankr. D. Del. 2004) (validity or ambiguity of contract setting forth indemnity is not relevant to determination of "related to" jurisdiction).

[22] This sworn statement negates Plaintiff's argument that J&J has adduced "no evidence that either party [*i.e.* the Debtors and J&J] procured insurance for the other."

in *Federal Mogul* cited with approval the Fifth Circuit's analysis in *Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001), noting that the *Garlock* court distinguished the "unity of identity between the debtor and the [non-debtors]" in the Sixth Circuit's decision in *In re Dow Corning Corp*, 86 F.3d at 493, where "each of the [non-debtors] was closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries," from circumstances "where the co-defendants variously use[d] asbestos for brake friction products, insulation, gaskets, and other uses." *Fed.-Mogul Glob., Inc.*, 300 F.3d at 384 (quoting *Garlock, Inc.*, 278 F.3d at 440).[23]

Here, the State Court Talc Claims present precisely the same unity of identity as in *Dow*; they arise out of a single type of product (two products total) manufactured by J&J and supplied exclusively by Debtors, sold to a uniform market of consumers allegedly incurring the same types of injuries. Any liability of J&J derives from Debtors'-supplied talc, as the presence of Debtor Imerys Talc America, Inc. as a co-defendant in approximately 90% of talc-related actions against J&J underscores. *Cf. In re TK Holdings, Inc.*, Nolan Decl. Ex. 14 (TKH Hr'g Tr.) at 16

---

[23] *Accord Combustion Eng'g*, 391 F.3d at 230–31 (distinguishing "single product" in *Dow* from claims concerning different products, materials, and markets in *Combustion*). The *Pacor* decision Plaintiff cites, in addition to not involving contractual indemnity claims, also did not involve any shared insurance claims, nor arguments that there was an identity of interests between the movants and debtors. The claims against the state of Montana in *W.R. Grace* did not involve contractual indemnity or shared insurance claims and there, the Third Circuit declined to find that an identity of interests existed between Montana and the debtor, an asbestos product producer because—unlike with J&J and Debtors—these parties' potential liabilities arose from entirely different duties and circumstances. *W.R. Grace & Co.*, 591 F.3d at 173. And in *Combustion Engineering*, the Third Circuit explained that it would have remanded for the district court to further assess and remedy its "insufficient findings of fact" on shared insurance issues but refrained from doing so on alternative, unrelated grounds. *Combustion Eng'g*, 391 F.3d at 232–33. There, the court also found a "unity of interest" lacking where "the asbestos-related personal injury claims [against debtors and non-debtors arose] from different products, involved different asbestos-containing materials, and were sold to different markets" *Id.* at 231. Again, as in *W.R. Grace*, those facts in no way resembled the exclusive talc supply relationship between Debtors and J&J. *See generally* Venue Motion, Argument II.C. Dkt. 22.

("This case before me today is not analogous to an asbestos case where there are often dozens of potentially responsible parties, each one effectively to the exclusion of the others and a persistent and legitimate question of whether a plaintiff has any actual relationship to a particular defendant. Here, every single claimant knows the vehicle they purchased and can establish the fact that it contains a Takata airbag system."). Debtors are, effectively, the true party in interest in the Talc Claim actions. For this reason, Plaintiffs fail in their attempt to equate the posture of the State Court Talc Claims to traditional asbestos mass tort cases by seizing on allegations that J&J's talcum powder products were contaminated with asbestos. There is no black-letter carve out for "asbestos cases" and there is no comparison between the narrow allegations of contamination in J&J's *two* products supplied *exclusively* by Debtors, and traditional asbestos cases involving multiple suppliers, multiple products, and multiple duties. The State Court Talc Claims are nothing like the claims at issue in *Federal-Mogul*, *Garlock*, *Combustion Engineering*, and *W.R. Grace*. Further, it is of no consequence whether (1) the Debtors were ever named or remain as co-defendants with J&J in a case (and, in this case, Imerys Talc America Inc. in fact remains a party, despite Plaintiff's assertion to the contrary, Pl. Mem. 28); or (2) whether plaintiffs' claims against Debtors have been stayed and/or severed.[24]

---

[24] *See Pacor, Inc.*, 743 F.2d at 994 ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, *the proceeding need not necessarily be against the debtor or against the debtor's property*.") (emphasis added); *In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *1, *12 (D. Me. Mar. 21, 2014) (granting transfer under 28 U.S.C. § 157(b)(5) even though claims against the debtors had been dismissed, and in actions where debtors had not been named as defendants); *W.R. Grace & Co.*, 386 B.R. at 23–30 & n.33 (exercising "related to" jurisdiction in more than 100 asbestos-related personal injury suits against non-debtor railroad, most of which did not name any debtors as co-defendants); *A.H. Robins*, 788 F.2d at 1016 (district court had jurisdiction to stay and transfer, pursuant to § 157(b)(5), cases against non-debtor co-defendants of debtors subject to stay).

Plaintiff's argument that this matter should be remanded because Kentucky law prohibits the litigation of any indemnification claims as between J&J and the Debtors in the same trial as the direct claims alleged by her against J&J is misplaced for several reasons.[25] First, the underlying legal supposition made by Plaintiff is incorrect; there is nothing under Kentucky law that prohibits the trial of a direct liability tort claim with attendant apportionment along with a related third-party indemnification claim. Indeed, as a case cited by Plaintiff plainly states, the contrary is true. *Asher v. Unarco Material Handling, Inc.*, No. CIV.A. 6:06*548-DCR, 2007 WL 3046064, at *4 (E.D. Ky. Oct. 16, 2007) ("Although *impleader is permissible* with regard to *claims for indemnity*, it is not required under KRS § 411.182.5.") (emphasis added). Second, there are presently no third-party indemnification claims pending in this matter, and in any event, most significantly, this Court's "related to" jurisdiction is based in part not on the existence of any actual indemnification claims, but instead and as already discussed, on the indemnification language in contracts between J&J and the Debtors, which was triggered when this action was commenced.

---

[25] Plaintiff's specific argument on this score is: "Johnson & Johnson's and Imerys' indemnity claims must be pursued separately in a separate action, which has nothing to do with Donna Hayes' estate. To the extent that Johnson & Johnson has an indemnity claim against Imerys or vice versa [which is not subject to apportionment under KRS § 411.182], it cannot be tried in the same case with Donna Hayes [which is subject to apportionment] rendering it further impermissible to remove her case from the Court in which it has been litigated for the last three years." Pl. Mem. 19; *see also id.* 18 ("The Kentucky Court of Appeals has unequivocally held that apportionment and indemnity cannot co-exist, 'It is clear that apportionment of fault under KRS 411.182 is inapplicable in an indemnity claim.'") (quoting *Downs v. CSX Transportation,* 2013 WL 3120191, at *5 (Ky. Ct. App. 2013).

## IV. This Court Should Not Conduct an Abstention Analysis, and Any Such Analysis Disfavors Abstaining Here

### A. *The Delaware District Court is the Proper Court to Conduct an Abstention Analysis*

28 U.S.C. § 157(b)(5) instructs "that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*." (emphasis added). Thus, it is the Delaware District Court's exclusive mandate to set venue. *See Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 708 (D. Del. 2006) (the Delaware District Court recognizing, under § 157(b)(5), its "sole authority to determine the appropriate venue for [actions alleging] personal injury tort and wrongful death claims against, among others, [non-debtors over which the court has 'related to' jurisdiction]" where related bankruptcy is pending in that district); *see also A.H. Robins*, 788 F.2d at 1011 ("Section 157(b)(5) . . . expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts."). And, should the Delaware District Court find that it has jurisdiction, remand will be inappropriate unless *that* court chooses, against a "strong legislative presumption in favor of transfer," to abstain following abstention analyses. *In re Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *43 (quoting *Twin Labs.*, 300 B.R. at 841). Accordingly, because J&J has moved under § 157(b)(5) to fix venue in the Delaware District Court, it is the Delaware District Court rather than this Court that should engage in any abstention analyses or otherwise consider remand issues in the first instance. *Cf., e.g.*, *Hopkins*, 342 B.R. at 710; *New England Compounding*, 496 B.R. at 270.

### ***B. Mandatory Abstention is Inapplicable Here Because 28 U.S.C. § 157(b)(4) Exempts Personal Injury and Wrongful Death Claims***

Mandatory abstention is inapplicable in this case. Although Plaintiff relies on 28 U.S.C. § 1334(c)(2), she overlooks the exemption Congress created in 28 U.S.C. § 157(b)(4).[26] Under § 157(b)(4), "non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." In turn, § 157(b)(2)(B) describes proceedings that may result in "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."

Courts read the § 157(b)(4) exemption broadly, especially given Congress's recognition of the "potentially deleterious effects on a debtor's estate" that may be caused by "the unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims." *Beck v. Victor Equip. Co.*, 277 B.R. 179, 180–81 (S.D.N.Y. 2002). Thus, the exemption properly applies to personal injury or wrongful death claims against a debtor's indemnitee, like Plaintiff's claims against J&J. *See, e.g., New England Compounding*, 496 B.R. at 270–72 ("If the underlying harm giving rise to the estate's potential liability involves personal injury or wrongful death, the claim against a third-party concerning that harm is, in substance, a 'personal injury tort or wrongful death claim against the estate' and therefore covered by the exception in § 157(b)(2)(B)."); *Abbatiello v. Monsanto Co.*, No. 06 CIV. 266 (KMW), 2007 WL 747804, at *3 (S.D.N.Y. Mar. 8, 2007) ("Here, the exception to mandatory abstention also applies to litigation against [non-debtors] Pharmacia and New Monsanto, because

---

[26] Accordingly, the two-and-a-half pages that Plaintiff devotes to analyzing core and non-core proceedings and mandatory abstention is of no moment. *See* Pl. Mem. at 20-23.

[debtor] Solutia is obligated to indemnify Pharmacia and New Monsanto for any judgment awarded against them. Mandatory abstention is thus inapplicable to this action.”).[27]

### *C. This Court Should Decline to Permissively Abstain*

Permissive abstention is also unwarranted. Although a district court may abstain “in the interest of justice, or in the interest of comity with State courts or respect for State law,” 28 U.S.C. § 1334(c)(1), courts have questioned whether permissive abstention is proper in connection with a § 157(b)(5) transfer because of its statutory purpose, that is, to assure, “that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending.”[28] Accordingly, permissive abstention should be “rarely invoked” in circumstances like these.[29] *Beck*, 277 B.R. at 181.

---

[27] *See also Hopkins*, 342 B.R. at 709–10 (mandatory abstention does not apply, per § 157(b)(4), “to the liquidation of personal injury tort or wrongful death cases,” including those not “against the debtor or the debtor’s property”); *Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *44 (concluding mandatory abstention does not apply to cases, including against non-debtors, transferred pursuant to § 157(b)(5)); *Berry v. Pharmacia Corp.*, 316 B.R. 883, 889 (S.D. Miss. 2004) (“[T]he rationale for exempting personal injury and wrongful death claims against the debtor’s estate from the mandatory abstention provision applies fully to the claims against [non-debtor defendant].”).

[28] *See Pan Am.*, 950 F.2d at 845 (permissive abstention would “contraven[e] the legislative history”); *Beck*, 277 B.R. at 181 (discretionary abstention would “undercut the statutory purpose of § 157(b)(4)”); *see also Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *43 (recognizing the “strong legislative presumption in favor of transfer under § 157(b)(5) . . . [where] federal courts have a virtually unflagging obligation . . . to exercise” their jurisdiction).

[29] J&J also refers the Court to its Venue Motion, Argument III.B, for a more extensive discussion of the permissive abstention factors under § 1334(c)(1). Plaintiffs acknowledge that the permissive abstention analysis under 1334(c)(1) is “essentially the same” as an equitable remand analysis under section 1452(b). Pl. Mem. at 20 n.67, 23 n.81; *see In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Accordingly, the same equitable considerations that overwhelmingly support denial of the Remand Motion under section 1452(b), *see infra* Section V, also disfavor permissive abstention under section 1334(c)(1)

## V. Considerations Under Equitable Remand Support Denying Plaintiff's Remand Motion

This Court need not expend its resources in deciding the Remand Motion until the Delaware District Court rules on the Venue Motion. But if this Court does determine that it is appropriate to consider the Remand Motion prior to a ruling, it should not exercise its discretion under § 1452(b) to remand this action to the State Court because the equitable considerations favor adjudication of the Talc Claims in a centralized location, i.e., the District of Delaware. Under section 1452(b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action *on any equitable ground*." 28 U.S.C. § 1452(b) (emphasis added).

Courts typically consider the following non-exhaustive list of factors in determining whether equitable remand is appropriate: (1) whether remand would prevent uneconomical use of judicial resources; (2) what effect remand would have on the administration of the bankruptcy estate; (3) whether the case involves questions of state law better addressed by state court; (4) comity; (5) prejudice to involuntarily removed parties; (6) whether remand will lessen the possibility of inconsistent results; and (7) the expertise of the court in which the action originated.[30] *See, e.g., In re Riverside Nursing Home*, 144 B.R. 951, 956 (S.D.N.Y 1992); *Williams v. Shell Oil Co.*, 169 B.R. 684, 692–93 (S.D. Cal. 1994).

---

[30] This list overlaps in large part – and is not inconsistent – with that articulated by Chief Judge Stosberg of the Bankruptcy Court of this District in *In re Lowenbraun*, 313 B.R. 408, 413 (Bankr. W.D. Ky. 2004) ("Courts have listed the following non-exclusive factors as relevant: (1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be

Here, the flood of personal injury and wrongful death claims arising out of alleged exposure to the Debtors' talc caused the filing of the Debtors' Chapter 11 Case. As explained above, these claims' resolution will impact the bankruptcy estates. Therefore, they will also impact the overall theory, timing, and implementation of any chapter 11 plan. With this in mind, J&J removed this action and invoked § 157(b) in pursuit of a centralized venue for adjudication of the key threshold issues, which can provide equitable and uniform outcomes on those threshold issues for the Debtors' creditors—including the thousands of plaintiffs prosecuting similar claims and actions across the country—the Debtors' themselves, and J&J, and which serves the interests of efficiency and preservation of judicial resources. *Cf. Montreal Maine*, 2014 WL 1155419, at *12 ("[J]udicial economy and efficiency concerns . . . though insufficient to create bankruptcy-relatedness jurisdiction, do weigh in the determination to retain jurisdiction."). J&J's goal is to transfer this action and all State Court Talc Claims to a single court which will prevent disparate outcomes on the key threshold issues. Remand would frustrate this equitable result. Thus, factors (1), (2), and (6) – and factors (1), (6), and (8) of *In re Lowenbraun* – overwhelmingly support denial of the Remand Motion and outweigh any countervailing considerations.[31]

---

entered in state court with enforcement left to the bankruptcy court; (9) the burden of this court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; and (13) any unusual or other significant factors.") Chief Judge Stosberg's decision to remand in *In re Lowenbraun* was not based on a factor-by-factor analysis, but instead, largely by his view that (a) the "connection to the bankruptcy estate is tenuous at best and nonexistent at worst[;]" and (b) "removal to this court could also be construed as a not-so-thinly disguised attempt to forum shop which this Court will not condone." *Id*. Here, neither of these concerns is implicated.

[31] *See Nutraquest*, 2004 U.S. Dist. LEXIS 29143, at *45 (finding abstention improper because "[t]he centralization of all personal injury and wrongful death claims [including those against non-debtors] will assist in 'developing a reasonable plan of reorganization' or orderly plan of liquidation 'and at the same time assure fair and non-preferential resolution of outstanding

While it is true that Plaintiff's claims involve questions of state tort law, the state law and comity considerations contemplated in factors (3), (4), and (7) (and factors (2), (3), and (11) in *In re Lowenbraun*) also do not favor remand. By enacting 28 U.S.C. § 157(b)(5), Congress specifically "singled out" personal injury claims, which are "almost always governed by state law," "as the very ones it wanted transferred." *In re Twin Labs.*, 300 B.R. at 841. Indeed, the thousands of personal injury claims against the Debtors, which will be handled in Delaware, similarly involve issues of state law. The District of Delaware to which J&J seeks to transfer Plaintiff's claims is best equipped to address them, collectively with the State Court Talc Claims, in light of the fact that such claims are proceeding all across the country. Moreover, remand based on predominance of state law questions is only warranted where "a particularly unusual question" or "unsettled questions" of state law exists. *In re Pan Am. Corp.*, 950 F.2d 839, 846 (2d Cir. 1991). Plaintiffs' claims consist of straightforward product liability and negligence claims. Plaintiffs' state court complaint, Dkt. No. 1, Ex. A, asserts causes of action for products liability (under design defect and failure to warn theories), negligence, and related fraudulent misrepresentation/conspiracy/concerted action claims. None of the law is "difficult, unsettled, or unfamiliar to a federal court." *See In re Twin Labs.*, 300 B.R. at 841. Moreover, while Plaintiff's state court claims confer jury trial rights, there is no threat to those rights here; the very provision under which J&J has filed its Venue Motion fixes venue for where "claims shall be *tried*." 28 U.S.C. § 157(b)(5) (emphasis added). To the extent comity bears significant weight in the

---

claims.'") (quoting *In re Dow Corning*, 86 F.3d at 496); *New England Compounding*, 496 B.R. at 273 (finding abstention would be "counterproductive" to judicial efficiency and the fair and efficient distribution of the estate); *Pan Am. Corp.*, 950 F.2d at 845 (describing the "manifest purpose of [§] 157(b)(5)" as "consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's limited jurisdictional scheme.").

analysis, it supports denial of the Remand Motion pending the District of Delaware's decision on the Venue Motion.

As for factor (5), there are 2,400 State Court Talc Claims brought by plaintiffs also awaiting their day in court, and nearly all of them have a cancer diagnosis. Declining to remand and allowing the orderly transfer of the State Court Talc Claims, including Plaintiff's, to the Delaware District Court under §§ 157(b)(5) and 1334(b) offers the best chance for an efficient adjudication of *all* plaintiffs' claims while they are still alive. Indeed, J&J's Venue Motion stands to benefit all of Debtors' creditors, including all of the State Court Talc Claim plaintiffs.[32]

## VI. If this Court Remands, it Should not Award Fees or Costs because J&J had a Legitimate, Good Faith Basis for Removal

Plaintiff concludes her Remand Motion by requesting an award of fees and costs under 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") and because J&J allegedly "has acted in bad faith or vexatiously." Pl. Mem. 29. Her theory is that J&J "removed this case in bad faith" and that "its timing of the removal is inexplicable" because "[t]he Jefferson Circuit Court denied Johnson & Johnson's motion for summary [judgment] on April 12, two weeks before Defendant filed its notice of removal." *Id*. She contends, "Johnson & Johnson cannot use the federal court system as a de facto appeal of the state court's ruling."

However, this position is thoroughly undermined by the fact, discussed above in Footnote 16, that the removal of this matter was part and parcel of the similarly-timed removal of over 2,000 cases of like kind. The removal here does not reflect, as Plaintiff further argues, an effort

---

[32] For these reasons, the fact that J&J removed only the claims that Plaintiff alleged against it – and not its against its co-defendants, including Colgate-Palmolive, Dkt. 1 ("Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, 'J&J') hereby remove *the claims against J&J*….") (emphasis added) – is not a reason for this Court to remand.

to "game the system." Pl. Mem. 30. Because this is so, and in light of the fact that, at the least, J&J had a good faith "objectively reasonable" basis to remove, this Court should deny Plaintiff's request for fees and costs if it decides to order a remand.[33] *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1060 (6th Cir. 2008) ("[A] district court deciding whether to award fees in this situation [under § 1447(c)] … must … decide whether the removal was objectively reasonable. The district court should deny fees when an objectively reasonable basis exists.") (citations omitted); *Martin v. Franklin Capital Corp*., 546 U.S. 132, 136 (2005) ("We hold that, absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal.")

## CONCLUSION

For the foregoing reasons, as well as those set forth in J&J's Notice of Removal, this Court should deny Plaintiff's Remand Motion or, in the alternative, hold the Remand Motion in abeyance pending the forthcoming decision from the Delaware District Court on the Venue Motion.

Respectfully submitted, this 10th day of May, 2019.

LEWIS BRISBOIS BISGAARD &
SMITH LLP

/s/Brantley C. Rowlen
R. Scott Masterson
Kentucky Bar No. 91829
Brantley C. Rowlen
Kentucky Bar No. 93995

---

[33] The "objectively reasonable" nature of J&J's removal of this action is exemplified by the fact that judges sitting in the Southern District of New York, the Eastern District of New York, and the Southern District of Ohio already have issued stays pending rulings from the District of Delaware and/or the existing MDL panel. *See supra* p.4 and Footnote 6.

Ashley W. Spires
Kentucky Bar No. 95290
1180 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30309
404.348.8585 – Telephone
404.467.8845 – Facsimile
scott.masterson@lewisbrisbois.com
brantley.rowlen@lewisbrisbois.com
ashley.spires@lewisbrisbois.com

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a copy of the foregoing ***Motion for Leave to File Opposition Memorandum in Excess of Twenty-Five Pages*** to be served via the CM/ECF system, which will automatically send email notification to the following:

Joseph D. Satterley, Esq.
Paul J. Kelley, Esq.
Paul J. Ivie, Esq.
J. Eric Kiser, Esq.
J. Garrett Cambron, Esq.
8700 Westport Road, Suite 02
Louisville, KY 40242
***Counsel for Plaintiff***

Moshe Maimon, Esq.
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
***Counsel for Plaintiff***

Keith M. Ameele, Esq.
Foley & Mansfield
300 S. Grand Avenue, Suite 2800
Los Angeles, CA 90071
***Counsel for Colgate-Palmolive Co.***

Matthew w. Breetz, Esq.
Fredrick R. Bentley, Esq.
Stites & Harbison, PLLC
400 west Market Street, Suite 1800
Louisville, KY 40202
***Counsel for Colgate-Palmolive Co.***

Meredith M. Shaw, Esq.
Brad E. Estes, Esq.
J.D. Horton, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
**Counsel for Colgate-Palmolive Co.**

Adam Abensohn, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10028
***Counsel for Colgate-Palmolive Co.***

Morgan Tovey, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
**Counsel for Colgate-Palmolive Co.**

J. Kirk Goza, Esq.
Nathan Guest, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 2005

**Counsel for Colgate-Palmolive Co.**

This 10th day of May, 2019.

LEWIS BRISBOIS BISGAARD & SMITH LLP

/s/Brantley C. Rowlen
R. Scott Masterson
Kentucky Bar No. 91829
Brantley C. Rowlen
Kentucky Bar No. 93995
Ashley W. Spires
Kentucky Bar No. 95290

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc.*

1180 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30309
404.348.8585 – Telephone
404.467-8845 – Facsimile
scott.masterson@lewisbrisbois.com
brantley.rowlen@lewisbrisbois.com
ashley.spires@lewisbrisbois.com